Samuel CRAWFORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 48029.

Court of Criminal Appeals of Texas.

May 15, 1974.

Rehearing Denied June 5, 1974.

Marvin O. Teague [On Appeal], Houston, for appellant.

Carol S. Vance, Dist. Atty. and James C. Brough and Stanley Topek, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is from a conviction for the offense of robbery by assault wherein the punishment was assessed at five (5) years' confinement in the Texas Department of Corrections.

On appeal appellant's counsel has filed an appellate brief in which he concludes the appeal is without merit and wholly frivolous. Aware of his duties under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Gainous v. State, 436 S.W.2d 137 (Tex.Cr.App. 1969), counsel has advanced arguable contentions to support the appeal.

Initially, appellant challenges the sufficiency of the evidence to support his conviction, contending the evidence reflects the offense of theft, not robbery, since there is no showing of antecedent violence prior to the alleged offense.

The complainant, Dorothy Mae Countee, testified that on July 30, 1971, while riding a bus in Houston, she noticed the appellant, a passenger on the bus, was "watching" her. When the complainant alighted from the bus at her destination, appellant also dismounted same and began walking beside her. After initiating a conversation with the complainant, appellant learned that she was enroute to pay a bill at a "television rental place" and followed the complainant to her destination. After arriving at the store, the complainant proceeded to pay the cashier her bill of $14.40 when the appellant instead offered his money to the cashier, who accepted same. The couple then left the store with the appellant inquiring where she was going. Appellant then hailed a cab, which carried the couple to the NuDay Hotel, located in Houston. The appellant and the complaining witness then went to a room in the hotel which, in the complainant's opinion, was filthy. The complainant then told the appellant that she could not "lay" in there because of the condition of the room. While in the room, the complainant undressed, but testified that the appellant did not "make love" to her because "he couldn't." As she commenced to dress, the appellant snatched her clothes from her and demanded his money in return. When the complainant offered to return the cash, the appellant refused to accept it. Approximately two hours later, appellant dressed and left the hotel.

Complainant further testified that her next confrontation with the appellant occurred three days later when he threatened her that if she didn't give him "some kind of sex or consideration" he would kill her. The complaining witness also testified that the appellant threatened her in the same manner over the telephone on numerous occasions and that she was afraid of him. The last of these conversations occurred at approximately 11:30 a. m. on August 5, 1971, when the appellant told the complain-

ing witness that "By the time I get off work you had better see me, and if you don't I will kill you. You either give me some kind of sex consideration or either go to Ben Taub[1] or I will kill you, and you had better never walk the streets if you don't."

Shortly thereafter, the complainant was walking to the store with her niece when the appellant approached them and said, "Now, talk your big talk" and "Give me my money." The appellant "grabbed" the complainant, who gave her purse to her niece, and the appellant snatched the purse from the niece and a struggle ensued between the complainant and appellant. During the struggle, appellant started hitting the complaining witness with his fists and also took $18 from her after prying her hand open.

The complainant further testified that she had managed to escape her attacker's grasp and began running away until the appellant caught her and was hitting her when the police arrived. She related the purse contained $71.

Officer J. R. Johansen of the Houston Police Department testified that while on patrol on August 5, 1971, he saw the appellant attempting to strike the complainant, when she broke away and started running down the street with the appellant in pursuit. Johansen then turned his patrol car around and was returning to the scene when he noticed that the appellant had a purse in one hand while attempting to strike the woman with the other. The witness further testified that the appellant then placed his hand in the purse, and when the officer alighted from his vehicle, the appellant had his hand in his pocket. Upon being informed of what had occurred, the officer arrested appellant and a search of his person uncovered over $100 in cash, with $58 tagged under the complainant's name.[2]

---

1. "Ben Taub" is the County Hospital in Houston.

2. The complainant testified she was nervous and excited at the time and told the police only $58 was missing when in fact a larger amount of money had been taken.

**584**

To constitute the offense of robbery, there must be actual or threatened violence to the person antecedent to the robbery or intimidation of such character that the injured party is put in fear. The fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will. Jones v. State, 467 S.W.2d 453 (Tex.Cr.App.1971), and cases therein cited.

The record is replete with testimony of threatened violence and intimidation which placed the complainant in fear of life or serious bodily injury prior to the taking of the property in question.[3] After numerous threats over the telephone, the appellant approached the complainant, demanding money, and "grabbed" her before she handed her purse to her niece. After a struggle ensued, the appellant pried the complainant's hand open and took money in addition to that in the purse he had secured.

It is true that in Jones v. State, 467 S.W.2d 453, 454 (Tex.Cr.App.1971), this court stated:

"It is well settled that to constitute the offense of robbery, there must be actual or threatened violence to the person antecedent to the robbery, or intimidation of such character that the injured party is put in fear. . . ."

Under the circumstances presented, we cannot agree that the evidence in the instant case fails to show antecedent violence. The evidence is sufficient to establish antecedent violence which distinguishes the offense of robbery from that of theft from person. See Glasper v.

State, 486 S.W.2d 350 (Tex.Cr.App. 1972); Hicks v. State, 482 S.W.2d 186 (Tex.Cr. App. 1972); Jemmerson v. State, 482 S. W.2d 201 (Tex.Cr.App.1972); Van Arsdale v. State, 149 Tex.Cr.App. 639, 198 S.W.2d 270 (1946).

Nevertheless, relying upon Barton v. State, 88 Tex.Cr.R. 368, 227 S.W. 317 (Tex.Cr.App. 1921), the appellant contends that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute robbery by assault. *Barton* did recognize such rule and observed that in Fanin v. State, 51 Tex.Cr.R. 41, 100 S.W. 916 (1907), there were expressions varying from the views stated in *Barton,* but that they were out of harmony with the weight of authority, both English and American.

In the later case of Henderson v. State, 149 Tex.Cr.R. 167, 192 S.W.2d 446 (1946), *Fanin* was cited with approval, with the court saying:

"To hold otherwise would be establishing a dangerous doctrine, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence. This is contrary to the policy of our form of government."

*Fanin* and *Henderson* have been cited with approval in Turner v. State, 150 Tex.Cr.R. 90, 198 S.W.2d 890 (Tex.Cr. App. 1946), and Frazier, v. State, 170 Tex.Cr.R. 432, 342 S.W.2d 115 (Tex.Cr. App. 1961).

Appellant contends that although some later opinions, without mention of *Barton,* have reverted to the *Fanin* holding *Barton* has not been overruled and is still viable[4] and is here controlling.

---

3. On redirect examination the complainant testified:
"Q. Did Samuel Crawford make an assault on you?
"A. Yes. He did.
"Q. Did he put you in fear of your life and bodily injury?
"A. Yes. He did.
"Q. Did he take from your possession a purse and money against you will?
"A. Yes. He did.

"Q. And was that your property that he took?
"A. Yes. It was."

4. In Wharton's Criminal Law, Vol. 2, Sec. 550, p. 250, it is said:
"Except in a few jurisdictions, a creditor's taking of money from his debtor to satisfy or secure the obligation, either by force or intimidation, is not regarded as robbery, the generally accepted doctrine being that the requisite animus furandi can-

Even if *Barton* is alive and well, as appellant contends, and even if the fact situation in the instant case can be stretched to cover a creditor-debtor situation, the appellant cannot prevail.

In Bass v. State, 151 Tex.Cr.R. 172, 206 S.W.2d 599 (1947), it was written:

"We think that the principle involved in the Barton case does not avail one who takes not only property which he claims but other property at the same time. The appellant says he claims only $3.85, but admits taking $20."[5]

In the instant case the appellant paid the complainant's bill of $14.40 without request. If a creditor-debtor relationship was established, the money actually taken at the time of the alleged offense was far in excess of $14.40.

Still further, to eliminate any confusion in the prior holding of this court, we overrule Barton v. State, supra.[6]

■ Next, appellant complains that his conviction is void because "The court in which the appellant was tried was not a court of competent jurisdiction." Complaint is also made that the Honorable H. P. (Horsepower) Green, a retired judge, conducted the trial without a proper appointment from the Chief Justice of the Supreme Court of Texas.

The record reflects that Judge Green conducted the trial in the 176th District Court B beginning December 13, 1972.

An administrative assignment signed by the Honorable Joe R. Greenhill, Chief Justice of the Supreme Court of Texas, dated December 18, 1972, assigned Judge Green to the 176th District Court B beginning January 1, 1973.

No objection was made to Judge Green's presiding. The matter was raised for the first time in the appellate brief.

As this court stated in Peach v. State, 498 S.W.2d 192 (Tex.Cr.App. 1973):

"The Court of Criminal Appeals will take judicial notice of the fact that the judge who presided at the trial of the accused was retired on a certain date and had timely filed his election to continue in a judicial capacity. Buchanan v. State, 471 S.W.2d 401 (Tex.Cr.App. 1971). And such judge is a 'district judge' within the rule that no formal order need be entered for a judge of one district court to preside over a case in place of a duly elected judge and no formal order is required for him to preside. Buchanan v. State, supra."

Whether Judge Green was assigned by administrative order to sit in the 176th District Court on the date in question would not matter under the circumstances presented. Since Judge Green, as a retired judge and having properly filed his election to continue to serve as a judicial officer, is a district judge in this sense, no formal order need have been entered at the time of trial for him to preside over the case. Even so, appellant's failure to object

not exist when the property is taken under a bona fide claim of right. The rule is different however, in some jurisdictions, as to the forcible taking of property for the purpose of collecting uncertain, unliquidated damages, and such a taking will support a prosecution for robbery."

5. Interestingly, *Bass* does not mention *Fanin* or other cases following it, just as those cases do not consider *Barton*.

6. Compare Sec. 9.503, Uniform Commercial Code, which reads:
"Unless otherwise agreed a scured party has on default the right to take possession

of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9.504."

at the time of trial waives any complaint he now has on appeal. See and compare Peach v. State, supra; Buchanan v. State, supra; Gregory v. State, 495 S.W.2d 891 (Tex.Cr.App. 1973).

Appellant's second ground of error is overruled.

Appellant has presented other grounds of error which are not briefed or argued and clearly do not comply with the provisions of Article 40.09, Sec. 9, Vernon's Ann.C.C.P. After reviewing same and concluding that nothing is presented "in the interest of justice" under Article 40.09, Sec. 13, Vernon's Ann.C.C.P., appellant's contentions are overruled.

Further, after thorough examination of the record, we conclude that the appeal is wholly frivolous.

The judgment is affirmed.