COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-183-CR
 
  
STEVEN 
DOUGLAS ARMSTRONG                                            APPELLANT
A/K/A 
STEVEN D. ARMSTRONG
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------
 
OPINION**
 
------------
        A 
jury convicted Appellant Steven Douglas Armstrong a/k/a Steven D. Armstrong of 
capital murder, and the trial judge imposed an automatic life sentence, the 
State having waived the death penalty. Armstrong brings two issues on appeal, 
contending that the trial court committed charge error. We affirm.
Background Facts
        On 
January 23, 2003, Live Oak police stopped Armstrong while he was leaving an area 
known for burning stolen cars. The police searched the area from which Armstrong 
had been seen leaving and found a Cadillac belonging to the complainant, 
Christopher Palmer. After the Live Oak Police Department notified the Fort Worth 
Police Department that it had found the car, Fort Worth police officers were 
sent to Palmer’s house. After entering Palmer‘s house, the police discovered 
Palmer‘s body with multiple stab wounds. According to Armstrong’s statement, 
he went to Palmer’s house to collect on a debt, and the two began to fight. 
Defeated, Palmer stopped fighting but refused to give Armstrong the money that 
he owed him. Determined to get his money, Armstrong then went to the kitchen, 
grabbed a knife, and told Palmer that he was serious, and that the best thing 
for him to do was to give Armstrong the money.[1]  
Palmer lunged and swung at Armstrong. Armstrong claims that only after Palmer 
began lunging and swinging at him did he stab Palmer. After stabbing Palmer 
multiple times, Armstrong removed money and valuables from the home and drove 
away in Palmer’s Cadillac. At trial, Armstrong pled not guilty to capital 
murder. The jury found Armstrong guilty of capital murder, and the trial court 
sentenced him to life in prison, the State having waived the death penalty.
        In 
his first issue, Armstrong argues that the trial court erred in failing to 
instruct the jury to consider the lesser included offenses of murder, aggravated 
robbery, and aggravated assault. He also argues that the trial court erred in 
failing to instruct the jury on the defense of self-defense. In his second 
issue, he again argues that the trial court erred in failing to instruct the 
jury to consider self-defense.
Lesser Included Offenses
        To 
determine whether a jury must be charged on a lesser included offense, we apply 
a two-step analysis. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 
1998). The first step is to decide whether the offense is a “lesser included 
offense” as defined in article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 
(Vernon 1981); Moore, 969 S.W.2d at 8. A lesser included offense is 
defined both in terms of the offense charged and the facts of the case: “An 
offense is a lesser included offense if . . . it is established by proof of the 
same or less than all the facts required to establish the commission of the 
offense charged.” Tex. Code Crim. Proc. 
Ann. art. 37.09(1). Therefore, our analysis of whether an offense is a 
lesser included offense of the charged offense must be made on a case-by-case 
basis. Bartholomew v. State, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); Day 
v. State, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh'g). It 
does not matter if the charged offense can be established on a theory that does 
not contain the lesser offense; the issue is whether the State, when presenting 
its case to prove the offense charged, also includes proof of the lesser 
included offense as defined in article 37.09. See Bartholomew, 871 S.W.2d 
at 212; Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982). 
Second, some evidence must exist in the record that would permit a jury to 
rationally find that if Armstrong is guilty, he is guilty only of the lesser 
offense. Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert. 
denied, 510 U.S. 919 (1993); Royster v. State, 622 S.W.2d 442, 446 
(Tex. Crim. App. 1981).
        The 
evidence must be evaluated in the context of the entire record. Moore, 
969 S.W.2d at 8. There must be some evidence from which a rational jury could 
acquit the defendant of the greater offense while convicting him of the lesser 
included offense. Id. The court may not consider whether the evidence is 
credible, controverted, or in conflict with other evidence. Id. If there 
is evidence from any source that negates or refutes the element establishing the 
greater offense, or if the evidence is so weak that it is subject to more than 
one reasonable inference regarding the aggravating element, the jury should be 
charged on the lesser included offense. Id.; see also Schweinle v. State, 
915 S.W.2d 17, 19 (Tex. Crim. App. 1996); Saunders v. State, 840 S.W.2d 
390, 391-92 (Tex. Crim. App. 1992).
        The 
trial court instructed the jury that it could convict Armstrong of capital 
murder if the jury found that he had committed murder in the course of 
committing robbery or burglary of a habitation. The State does not challenge 
Armstrong’s contention that murder, aggravated robbery, and aggravated assault 
are lesser included offenses of capital murder in the course of committing 
robbery. The issue here is whether there is evidence to raise the lesser 
included offenses.
Aggravated Assault and Aggravated Robbery
        In 
another capital murder case, the Texas Court of Criminal Appeals held that 
“[a] murder defendant is not entitled to an instruction on the lesser included 
offense of aggravated assault when the evidence showed him, at the least, to be 
guilty of a homicide.” Jackson v. State, 992 S.W.2d 469, 475 (Tex. 
Crim. App. 1999); see also Forest v. State, 989 S.W.2d 365, 368 (Tex. 
Crim. App. 1999). In the case before us, Armstrong does not dispute causing the 
complainant’s death; there is no evidence that the complainant suffered a 
lesser form of serious bodily injury. See Jackson, 992 S.W.2d at 475. 
Consequently, there is no evidence that Armstrong is guilty, if at all, only of 
aggravated assault. Armstrong was therefore not entitled to an instruction on 
aggravated assault.
        Additionally, 
there is no evidence that the homicide in the case before us was anything other 
than intentional. Consequently, there is no evidence that Armstrong is guilty, 
if at all, only of aggravated robbery. See Tex. Penal Code Ann. §§ 29.02(a)(1), 
29.03 (Vernon 2003) (allowing an aggravated robbery conviction if actor 
recklessly caused serious bodily injury), Texas 
Penal Code Ann. § 1.07(46) (Vernon Supp. 2004-05) (including bodily 
injury that causes death within the definition of “[s]erious bodily 
injury”); see also Jackson, 992 S.W.2d at 475. He was therefore not 
entitled to an instruction on aggravated robbery.
Murder
        Similarly, 
we must determine whether there is evidence that Armstrong is guilty, if at all, 
only of murder, not capital murder. Here, even if we take as true Armstrong’s 
own version of the events, he is not entitled to the lesser included charge of 
murder, because “[a] creditor who assaults his debtor to compel him to pay a 
debt can be convicted of robbery in this State.” Frazier v. State, 342 
S.W.2d 115, 116 (Tex. Crim. App. 1961); see also Jones v. State, No. 
01-90-00460-CR, 1995 WL 397045, at *6 (Tex. App.—Houston [1st Dist.] July 5, 
1995, pet ref’d) (not designated for publication); Collins v. State, 
800 S.W.2d 267, 269 (Tex. App.—Houston [14th Dist.] 1990, no pet.).
        Armstrong’s 
own statement reflects that he went to Palmer’s house to collect on a debt, 
that Palmer denied owing him money, that they fought, and that at some point 
during the scuffle, he grabbed a knife and told Palmer, that he was serious, and 
that the best thing he could do would be to give Armstrong the money. This is 
evidence of robbery. See Frazier, 342 S.W.2d at 116; see also Jones, 
1995 WL 397045, at *6; Collins, 800 S.W.2d at 269. It does not matter 
that Armstrong claims that he did not form the intent to take money and other 
items of value from Palmer’s home until after he killed Palmer, for his own 
statement establishes that Palmer was killed in the course of Armstrong’s 
attempt to collect a debt by force, i.e., robbery. Consequently, there is no 
evidence that Armstrong is guilty, if at all, only of murder. We hold that under 
the circumstances of this case, Armstrong was not entitled to an instruction on 
murder.
Self-Defense
        Finally, 
Armstrong argues that even if he committed theft he was nevertheless entitled to 
raise the defense of self-defense as to the intentional mental state required by 
the capital murder statute in causing the death. See Tex. Penal Code Ann. § 19.03(a)(2) 
(Vernon Supp. 2004-05). Although Armstrong argues that the complainant had a 
knife, the record does not support his assertion. The record reveals no evidence 
of conduct by the complainant that would justify Armstrong’s deadly force. A 
person is entitled to an instruction on self-defense only on those issues raised 
by the evidence. Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 
2001). The trial court, therefore, did not err in denying Armstrong’s 
requested self-defense charge. We overrule Armstrong’s first and second 
issues.
Conclusion
         Having 
overruled Armstrong’s two issues, we affirm the trial court’s judgment.
         

                                                                  BOB 
MCCOY
                                                                  JUSTICE
    
 
PANEL 
B:   DAUPHINOT, WALKER, and MCCOY, JJ.
 
DAUPHINOT, 
J. filed a dissenting opinion.
 
PUBLISH
 
DELIVERED: 
August 4, 2005






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-183-CR
 
 
STEVEN 
DOUGLAS ARMSTRONG                                            APPELLANT
A/K/A 
STEVEN D. ARMSTRONG
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------

DISSENTING OPINION

------------
        The 
majority confuses the standard for analysis of the sufficiency of the evidence 
with the standard for determining whether a jury instruction on a lesser 
included offense is warranted. Because the majority holds that Appellant is not 
entitled to a jury charge on murder despite the evidence that the theft was an 
afterthought and despite the evidence that the complainant owed Appellant $300 
worth of the property, including the twenty dollars Appellant took from the body 
and $280 worth of the remaining items, I must respectfully dissent from the 
majority’s holding that Appellant was not entitled to a jury instruction on 
the lesser included offense of murder.
        When 
there is evidence from any source that negates or refutes the element 
establishing the greater offense, if it could lead a rational juror to acquit 
the defendant of the greater offense while convicting him of the lesser included 
offense, we must take it as true in determining whether Appellant was entitled 
to the requested jury instructions.[2]  The 
majority sets out the correct standard of review but, unfortunately, does not 
employ it in its analysis. The issue in this case is whether there is any 
evidence which, if believed, could lead a rational juror to conclude that (1) 
the intent to steal was formulated after the murder, (2) consequently, there was 
no robbery,[3] (3) consequently, there was no murder 
in the course of committing robbery, the type of capital murder at issue,[4]  and (4) therefore Appellant is guilty, if at all, 
only of murder.[5]  If there is such evidence 
from any source, no matter how credible or weak, then Appellant was entitled to 
an instruction on murder. [6]
        A 
person commits capital murder if he intentionally causes the death of another 
person in the course of committing or attempting to commit robbery.[7]  The elements of robbery are that, in the course of 
appropriating property without the owner’s effective consent and with intent 
to deprive the owner of that property (that is, in the course of committing 
theft), a person “(1) intentionally, knowingly, or recklessly causes bodily 
injury to another; or (2) intentionally or knowingly threatens or places another 
in fear of imminent bodily injury or death.”[8]  
“‘[O]wner’ means a person . . . who has title to the property, possession 
of the property, whether lawful or not, or a greater right to possession of the 
property than the actor.”[9]  In criminal law 
the issue of ownership, an element of the offense, is a question of fact for the 
jury to determine.[10]
        Robbery 
requires assault in the course of committing theft.[11]  
"In the course of committing theft" means during an attempt to commit, 
during the commission, or in immediate flight after the attempt or commission of 
theft.[12]  The Texas Court of Criminal Appeals 
has recently reaffirmed the principle that “[f]or a murder involving a theft 
to constitute a capital murder committed in the course of a robbery, the intent 
to rob must be formulated before or at the time of the murder.”[13]  The elements at issue here are who owned the 
property taken and when did Appellant form the intent to take the 
complainant’s property?
        The 
record reflects that Appellant made at least three statements to police 
officers. One statement was written, one was an oral, recorded statement, and 
the other was oral but not recorded. There is testimony in the record relating 
the substance of the unrecorded statement.
        Once 
inside the complainant’s house, Appellant argued with the complainant about 
the complainant’s refusal to pay Appellant the approximately $300 he owed him. 
Appellant demanded his money, and the complainant said that he was not going to 
give him the money. The two men were yelling and angry, and Appellant punched 
the complainant with his fist. The complainant retaliated, and the men wrestled 
until Appellant overcame the complainant. Appellant said,
  
[A]t this point if I . . . went this far . . . came to his house beat him up . . 
. as far as money I was gonna get the money . . . you know . . . so . . . start 
what I finish . . . so I went to his kitchen pulled out the knife and uh . . . I 
mean I wasn’t gonna do nothing with it . . . I was just gonna tell him you 
know . . . I’m serious man you need to give me my money . . . you know . . . 
had that knife in my hand . . . I mean the best thing for you to do is just give 
me the money . . . that’s what I . . . basically I was telling him I wasn’t 
gonna do nothing with it I promise . . . .
  
 
        Appellant 
reiterated that he was not going to use the knife and described the 
complainant’s actions:
   
[A]nd then he composed himself and got up near me . . . no one can come in here 
(unintelligible) pull out a knife on me . . . I try to be an opponent to 
violence now days . . . now we have to get in to all this . . . I didn’t wanna 
. . . I came over here just to get my money and be on my way . . . and uh . . . 
so he swung . . . and uh . . . you know . . . then he kept lunging at me you 
know swinging . . . I just reacted . . . so I stuck him with the knife . . . . 
And it was a steady struggle . . . .
 
 
        After 
Appellant stabbed the complainant to death, he took twenty dollars from the 
complainant’s pocket. Because the twenty dollars fell far short of the nearly 
$300 that Appellant contended that the complainant owed him, Appellant took 
additional property to make up the difference. He took the complainant’s 
television set, a DVD player, some movies, a cell phone, and some marihuana. 
When he left, Appellant drove off in the complainant’s Cadillac.
        There 
is no direct evidence of the value of the property Appellant took from the 
complainant. A jury, however, could reasonably conclude that the combined value 
of all the items exceeded $300, the amount that Appellant claimed the 
complainant owed him. Because the jury could reasonably conclude that the value 
of the property taken exceeded the value of the claimed debt, it could also 
reasonably conclude that the excess property was stolen. Again, Appellant 
admitted to taking the property.
        Appellant 
claimed ownership of the property he first took, that is, the twenty dollars he 
took from the complainant’s body. His statement, taken as true, made clear 
that the complainant was refusing to return the money belonging to Appellant. If 
the complainant was not the owner, then there could be no theft and, 
consequently, no robbery.
        Our 
sister court in Houston addressed the issue of whether debt collection 
constitutes theft in the context of a shooting in the course of collecting a 
debt in Colllins v. State.[14]  The Collins 
court stated that, where the defendant claimed the complainant owed him thirty 
dollars that he had spent repairing her car, demanding payment with a shotgun 
was not the legal method of exercising a lien.[15]  
In the first place, the Houston court announced, the lien should be exercised 
against the car, not against the debtor.[16]  In 
the second place, the court claimed, force may not be used to collect a debt.[17]  The Collins court opined,
  
To hold that a creditor's assault upon a debtor for the purpose of collecting a 
debt does not constitute a robbery would be establishing a dangerous precedent, 
since it would authorize the accused not only to decide his own injury or damage 
but to enforce the collection thereof by force and violence. This is contrary to 
the policy of our form of government. Crawford v. State, 509 S.W.2d 582 
(Tex. Crim. App. 1974); Henderson v. State, 149 Tex. Crim. 167, 192 
S.W.2d 446 (Tex. Crim. App. 1946).[18]
  
 
        The 
Collins opinion turns, in part, on the fact that the debt was based on 
unliquidated damages.  Unfortunately, the Collins court does not 
cite us to authority to explain why the taking of an agreed sum of money owed is 
theft.  That is, the Collins court does not explain how it reaches 
the theft element of aggravated robbery to create a robbery instead of 
aggravated assault. Additionally, the Collins court does not explain 
whether demanding return of readily identifiable property, such as an automobile 
owned by the defendant or a handgun registered to the defendant, would be 
analyzed in the way the court analyzed the exercise of a lien.
        In 
Crawford v. State,[19]  Presiding Judge 
Onion was faced with a situation similar to the situation this court now 
considers and discussed the question of whether a creditor’s assault upon a 
debtor constitutes robbery:
  
Appellant contends that although some later opinions, without mention of Barton, 
have reverted to the Fanin holding, Barton has not been overruled 
and is still viable[20] and is here controlling.
 
Even 
if Barton is alive and well, as appellant contends, and even if the fact 
situation in the instant case can be stretched to cover a creditor-debtor 
situation, the appellant cannot prevail.
 
In 
Bass v. State, it was written:
  
We 
think that the principle involved in the Barton case does not avail one 
who takes not only property which he claims but other property at the same time. 
The appellant says he claims only $3.85, but admits taking $20.
   
In 
the instant case the appellant paid the complainant's bill of $14.40 without 
request. If a creditor-debtor relationship was established, the money actually 
taken at the time of the alleged offense was far in excess of $14.40.
 
Still 
further, to eliminate any confusion in the prior holding of this court, we 
overrule Barton v. State.[21]
 
        Unfortunately, 
the Crawford court did not completely answer the question of whether a 
creditor's assault upon a debtor for the purpose of collecting a debt is 
robbery.  We do not know whether taking by force the amount owed or less 
than the amount owed is robbery.  The case now before this court differs 
from Crawford in a significant circumstance.  The complainant in Crawford 
was in fear of death or bodily injury during the entire transaction, including 
both the time the defendant took what he claimed he was owed and the time he 
took more than he was owed.  Crawford turns on the fact that by 
taking more than he was owed, the defendant committed theft and therefore 
robbery.[22]
        Consequently, 
Appellant’s statement raises the issue of whether the complainant owned up to 
$300 of the property taken.  It also raises the issue of when Appellant 
decided to take more than he was rightfully owed.
        According 
to his statement, Appellant stabbed and killed the complainant while he and the 
complainant were fighting because the complainant refused to repay money he had 
borrowed from Appellant.  Appellant’s statement makes clear that the 
fight was not a struggle over the money and did not involve an attempt by 
Appellant to wrest the funds from the complainant or to physically force the 
complainant to hand over the money. Appellant had gone to the complainant’s 
apartment because he was trying to collect the money the complainant owed him. 
After Appellant saw that the complainant was dead, he looked in the 
complainant’s pockets for the money that the complainant owed him.
        A 
reasonable juror could conclude from Appellant’s statement that only after 
Appellant discovered that the complainant had only twenty dollars in cash did he 
decide to take the complainant’s other property and formulate the intent to 
steal. That is, a reasonable juror could conclude that the intent to steal was 
formulated after the murder and was, therefore, an afterthought.
        As 
I understand the statutes and caselaw, although Appellant committed murder under 
this scenario raised by his statement admitted into evidence, he did not commit 
the murder in the course of committing theft because the taking of the property 
of another did not occur until he took property exceeding the value of the debt. 
Consequently, I believe that Appellant’s statement raised the issues of 
ownership of the $300, whether the murder was committed in the heat of battle 
rather than in the course of committing theft, and whether the intent to steal 
arose well after the murder. If Appellant’s statement is taken as true, which 
we must do in determining whether a lesser included offense instruction is 
warranted,[23] there could be no robbery and no 
capital murder based on robbery.
        The 
majority may be correct in concluding that the evidence is sufficient to support 
the jury’s verdict. But Appellant’s point on appeal does not challenge the 
sufficiency of the evidence. The majority does not explain how Appellant’s 
statement does not raise the issue of the ownership element of theft. The 
majority also does not explain how Appellant’s statement does not raise the 
issue of whether the intent to commit theft arose after the murder was 
completed. While we may be in sympathy with the policy arguments advanced by the 
Collins court, we are restrained by the clear language of the robbery 
statute.[24] Robbery requires theft.[25]  Capital murder as validly charged in this case 
requires intentional murder in the course of committing robbery, not as an 
incident to robbery.[26]  Although we might feel 
that the statute should be rewritten, it is not within our province to do so.[27] That authority rests solely with the legislature.[28]
        Although 
the jury was free to believe or disbelieve the relevant portion of Appellant’s 
confession, the statement constitutes some evidence that the murder was not 
committed in the course of committing robbery. The issues before us are whether 
Appellant was entitled to a lesser included offense instruction on murder and 
whether the trial court’s failure to give him that instruction entitles him to 
a new trial in this case. I would hold that the answer to both of those 
questions is yes and reverse the case for a new trial on the merits. Because the 
majority affirms the trial court’s judgment, I dissent.
   
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
 
 
PUBLISH
 
DELIVERED: 
August 4, 2005
 


 
NOTES
 
** 
Majority 
by Justice McCoy; Dissent by Justice Dauphinot
  
        MAJORITY OPINION NOTES
1. 
The record contains a transcript presented to the jury which reflects that 
Armstrong stated the following in his audio taped statement:
 
at this point if I . . . went to this far . . . came to his house beat him up . 
. . as far as money I was gonna get the money . . . you know . . . so . . . 
start what I finish . . . so I went to his kitchen pulled out the knife and uh . 
. . I mean I wasn’t gonna do nothing with it . . . I was just gonna tell him 
you know . . . I ‘m serious man you need to give me my money . . . you know . 
. . had that knife in my hand . . . I mean the best thing for you to do is just 
give me the money . . . that’s what I . . . basically I was telling him I 
wasn’t gonna do nothing with it I promise . . . .
   
   
        DISSENTING OPINION NOTES
2. 
See Schweinle v. State, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); Saunders 
v. State, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).

3. 
See Tex. Penal Code Ann. § 
29.02(a) (Vernon 2003).

4. 
Id. § 19.03(a)(2) (Vernon Supp. 2004-05). Although Appellant was 
indicted for and the jury was charged on capital murder in the course of 
burglary and capital murder in the course of robbery, the majority apparently 
concedes that there is evidence in the record that Appellant entered the 
complainant’s home with his effective consent and no evidence to the contrary.

5. 
See Schweinle, 915 S.W.2d at 19; Saunders, 840 S.W.2d at 391-92.

6. 
See Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); Schweinle, 
915 S.W.2d at 19; Saunders, 840 S.W.2d at 391-92.

7. 
Tex. Penal Code Ann. § 
19.03(a)(2).

8. 
Id. § 29.02(a).

9. 
Id. § 1.07(a)(35)(A) (Vernon Supp. 2004-05).
 


10. 
Freeman v. State, 707 S.W.2d 597, 604-605 (Tex. Crim. App. 1986).

11. 
Tex. Penal Code Ann. § 29.02.

12. 
Id. § 29.01(1).

13. 
Herrin v. State, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002) (citing Conner 
v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)).

14. 
800 S.W.2d 267, 269 (Tex. App.—Houston [14th Dist.] 1990, no pet.).

15. 
Id.


16. 
Id.

17. 
Id.

18. 
Id.

19. 
509 S.W.2d 582, 584-86 (Tex. Crim. App. 1974).

20. 
In Wharton's Criminal Law, Vol. 2 Sec. 550, p. 250, it is said:
  
Except 
in a few jurisdictions, a creditor's taking of money from his debtor to satisfy 
or secure the obligation, either by force or intimidation, is not regarded as 
robbery, the generally accepted doctrine being that the requisite animus furandi 
cannot exist when the property is taken under a bona fide claim of right. The 
rule is different however, in some jurisdictions, as to the forcible taking of 
property for the purpose of collecting uncertain, unliquidated damages, and such 
a taking will support a prosecution for robbery.
 
 
21.  
Crawford, 509 S.W.2d at 584-86 (selected footnotes and citations omitted; 
footnotes in original).

22. 
See id. at 586.

23. 
See Schweinle, 915 S.W.2d at 19; Saunders, 840 S.W.2d at 391-92.

24. 
See Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

25. 
Tex. Penal Code Ann. § 29.02(a).

26. 
See id. § 19.03(a)(2).

27. 
See Boykin, 818 S.W.2d at 785.

28. 
See id.