In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00266-CR


______________________________




CLARENCE PIERCE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 03F0538-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 A Bowie County jury found Clarence Pierce guilty of aggravated robbery and assessed an
enhanced punishment of thirty years' confinement. He now appeals this conviction, arguing that the
record cannot support his conviction as a party to aggravated robbery when it shows only that he
accompanied a creditor who was collecting a debt. We reject his position, overrule his points on
appeal, and affirm his conviction.

I. FACTUAL BACKGROUND

 The record shows that a dispute over money arose between Mike Simpson and Greg Gideon
following a minor automobile accident in which Gideon backed into Simpson's vehicle in May 2002. 
Simpson was very insistent that Gideon pay for the damages he had caused and had beaten Gideon
in an effort to compel Gideon to pay, prompting Gideon to borrow money from his family in an
effort to satisfy the debt. On December 20, 2002, Simpson came to Gideon's home, accompanied
by Pierce and Bill Ray Moore. Pierce testified that he accompanied Simpson on this visit to serve
as Simpson's "muscle." 

 After the group arrived at Gideon's house, the exact sequence of events is unclear. Gideon
testified that, on learning that Pierce was at his front door, he went into his bedroom and armed
himself with a metal baseball bat. Gideon's houseguest, Ernest McGee, opened the door and
Simpson, Pierce, and Moore entered the Gideon residence, demanding money from Gideon. 
Violence broke out and Gideon swung the bat at one of the three men but missed, at which point in
time the bat was wrested from him by Pierce, who struck Gideon repeatedly with it, the battle going
on through the house until Gideon ended up lying in the bathtub. Gideon explained that, in order
to put an end to the beating, he agreed to give the men money and, then, handed over his checkbook
containing about $230.00 in cash and a check for $115.00, which had been written by Gideon's
girlfriend and made payable to him. Although it was demanded that Gideon endorse the check, he
did not, and the three men left after they learned that the police had been called and were presumably
on their way; the men carried the cash and the check with them as they left. Gideon was struck on
the jaw and his arms and legs.

 Gideon explained that he has been disabled since 1997 due to a major automobile collision. 
He also testified, however, that his disabilities include occasional memory loss. He clarified that,
while he can remember "quite a bit" about the incident, he does not remember everything about it. 

 According to McGee, the three men beat Gideon "something bad." McGee saw Simpson
striking Gideon with the bat but admits that he did not witness the entire incident, having left the
house to contact the police and to solicit help for Gideon. McGee described the relationship between
Simpson and Gideon as one in which there was "bad blood" and prior violence. He testified that he
observed Simpson strike Gideon with the bat and admits that he did not see Pierce hit Gideon with
it. 

 Testifying in his own defense, Pierce explained that the trio did not intend to strong-arm
Gideon, but did go to the house to collect money from Gideon. He admitted that he knew of the
ongoing conflict between Simpson and Gideon regarding money. He also admitted that he took the
bat away from Gideon and hit Gideon with the bat. 

 What is clear from the record is that, at the end of the encounter with Simpson, Pierce, and
Moore, Gideon had suffered a beating by Pierce using Gideon's own aluminum bat, and Simpson left
with $230.00 in cash and a check in the amount of $115.00 payable to Gideon. Gideon suffered
significant injuries including facial swelling, bruising about the arms and legs, and facial fractures. 

 The State charged Pierce with aggravated robbery. The jury found that Pierce was guilty of
such charges and assessed an enhanced punishment of thirty years' imprisonment. Pierce now
appeals this conviction, arguing that the evidence is legally and factually insufficient to support the
jury's verdict since the record shows only that he accompanied Simpson in an attempt to collect a
debt. Pierce maintains that Simpson, in the position of a creditor, cannot commit theft in the process
of collecting a debt.

II. APPLICABLE LAW

 A. Aggravated Robbery

 A person commits the offense of robbery if he or she, while in the course of committing theft,
and with intent to obtain or maintain control of the property, intentionally or knowingly threatens
or places another in fear of imminent bodily injury or death. See Tex. Penal Code Ann.
§ 29.02(a)(2) (Vernon 2003). A person commits the offense of theft if he unlawfully appropriates
property with the intent to deprive the owner of property. See Tex. Penal Code Ann. § 31.03(a)
(Vernon Supp. 2006). Appropriation of property is unlawful if it is without the owner's effective
consent. Tex. Penal Code Ann. § 31.03(b)(1) (Vernon Supp. 2006). The offense of robbery
becomes aggravated robbery, a first-degree felony, if the actor uses or exhibits a deadly weapon
during the commission of the robbery. See Tex. Penal Code Ann. § 29.03(a)(2), (b) (Vernon
2003).

 B. Law of Parties

 A person is criminally responsible for an offense committed by the conduct of another if,
acting with intent to promote or assist in the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense. See Tex. Penal Code Ann.
§ 7.02(a)(2) (Vernon 2003).

 The interplay between the application of the law of parties and the posture of Pierce's point
on appeal forces us to address this case in a somewhat unusual manner. Pierce does not contend that
his participation in the incident was insufficient to impose criminal responsibility under Section 7.02. 
Instead, he contends rather incredibly, that since Simpson acted as a creditor who was collecting a
debt, neither Simpson nor Pierce could have committed theft as defined by Section 31.03 of the
Texas Penal Code. Essentially, Pierce's position concedes that, if Simpson could commit theft (as
an element of aggravated robbery), then Pierce's own role in the encounter subjects him to criminal
responsibility under Section 7.02(a)(2). Therefore, rather than reviewing the record to determine
whether the evidence is sufficient to show that Pierce committed the offense of aggravated robbery,
we must limit our analysis to whether there is legally and factually sufficient evidence to show that
Simpson, the alleged creditor, committed the offense of theft.

 C. Debt Collection and Theft

 Pierce's position in this appeal is one that has been advanced in and rejected by Texas courts. 
The Texas Court of Criminal Appeals rejected a similar argument in Crawford v. State, 509 S.W.2d
582, 584-86 (Tex. Crim. App. 1974). The Crawford court reviewed the evidence to support
Crawford's conviction for robbery by assault and expressed doubt about whether the evidence even
established a creditor-debtor relationship. See id. at 585. Assuming it did, however, the court
refused to accept that such a relationship would preclude the jury from finding that Crawford
committed robbery by assault. Id. To clarify the inconsistent opinions on this issue, (1) the Crawford
court held that a creditor who assaults a debtor to collect an alleged debt may commit robbery: "To
hold otherwise would be establishing a dangerous doctrine, since it would authorize the accused not
only to decide his own injury or damage but to enforce the collection thereof by force and violence. 
This is contrary to the policy of our form of government." Id. at 584 (citing Henderson v. State, 149
Tex. Crim. 167, 192 S.W.2d 446 (1949)).

 The Fourteenth Court relied on Crawford in Collins v. State, 800 S.W.2d 267, 269 (Tex.
App.--Houston [14th Dist.] 1990, no pet.). The Collins court was faced with the issue of whether
the record contained legally sufficient evidence to sustain Collins's conviction for aggravated
robbery. See Collins, 800 S.W.2d at 267. Collins was convicted after he shot his ex-girlfriend,
Gilder, to collect on a $30.00 debt for a car part Collins had purchased. Id. at 267-68. Although the
evidence showed that Gilder owed Collins only $30.00, Collins took $85.00-$100.00. (2) Id. at 268. 
The court pointed out that shooting a debtor is not a legal method of exercising a worker's lien and
that the Texas Penal Code did not provide for a defense or justification based on the collection of
a debt. Id. at 269. The court continued that the use of force was prohibited to collect on a debt:

 To hold that a creditor's assault upon a debtor for the purpose of collecting a debt
does not constitute a robbery would be establishing a dangerous precedent, since it
would authorize the accused not only to decide his own injury or damage but to
enforce the collection thereof by force and violence. This is contrary to the policy of
our form of government.


Id. (citing Crawford, 509 S.W.2d at 582; Henderson v. State, 149 Tex. Crim. 167, 192 S.W.2d 446
(1946)). We believe this to be the prevailing law; to permit the excuse for assault to be that the
violence was used as a means to collect a debt would encourage a descent into lawlessness.

 Most recently, the Fort Worth Court of Appeals addressed a similar issue. See Armstrong,
179 S.W.3d at 88. When an appellant who had been convicted of capital murder complained on
appeal that the trial court erred by refusing to include an instruction on the lesser-included offense
of murder, the Armstrong court looked to the record to determine whether there was any evidence
that Armstrong was guilty, if at all, only of murder. See id. The court held that there was no
evidence that Armstrong was guilty only of murder since the evidence clearly established that he
committed aggravated robbery when he used force to collect the $300.00 which the victim allegedly
owed to Armstrong. Id. at 87-88. Since the evidence showed that the victim was killed in the
course of Armstrong's attempt to collect a debt by force, there was no evidence that would support
a verdict of murder rather than capital murder. Id. Although the issue in Armstrong is framed
somewhat differently than the issue presented in the instant case, the Armstrong majority plainly
announced its position that a creditor who collects a debt by use of force can commit aggravated
robbery. See id. Being in the position of a creditor does not endow the creditor with the right to
commit mayhem to collect a debt which is owed.

III. APPLICATION

 A. Legal Sufficiency of the Evidence

 The evidence shows that Gideon gave the group $345.00 in order to put an end to the assault. 
Gideon never conceded that he still owed Simpson the money he surrendered to the group. In fact,
he testified to the contrary: that he had borrowed money from family and paid Simpson for the
damage to the car in May 2002. Both his uncle and his mother testified similarly. Such evidence,
when viewed in a light most favorable to the verdict, undermines the very basis of Pierce's
position--that a creditor-debtor relationship existed at the time of the assault. That said, we
conclude that the evidence is legally sufficient to show the men committed theft of Gideon's property
and, thus, committed aggravated robbery.

 B. Factual Sufficiency of the Evidence

 Viewing the evidence, we conclude that the record contains no evidence contrary to the
verdict. Even if we assume that a creditor-debtor relationship was ever established and continued
to the point of the assault, the fact that Gideon may have owed Simpson money is not evidence that
would support a finding contrary to the verdict. Even if the record shows that Gideon still owed
money to Simpson as a result of the car accident, the record wholly fails to establish that Simpson
had ownership rights in the particular funds taken from Gideon on December 20. See Crawford, 509
S.W.2d at 584; Armstrong, 179 S.W.3d at 87-88; Collins, 800 S.W.2d at 269. To the contrary, the
record shows that the money belonged to Gideon.

IV. CONCLUSION

 We adopt the holding in Crawford, Armstrong, and Collins to the extent that such opinions
represent the position that a creditor who collects on a debt by use of force can commit the offense
of aggravated robbery. We echo the policy concerns expressed by courts throughout Texas regarding 
the implications of a holding that a creditor cannot commit the offense of aggravated robbery of his
debtor when the creditor uses force to collect on a debt.

 The record shows that the group beat Gideon with a baseball bat and took $345.00 from
Gideon; it fails to show that Simpson was the owner of those funds. With that, we conclude that the
evidence is legally and factually sufficient to sustain Pierce's conviction as a party to the aggravated
robbery. 

 We, therefore, affirm the judgment of the trial court.



 Bailey C. Moseley

 Justice


Date Submitted: January 24, 2007

Date Decided: February 2, 2007


Publish

1. See Henderson v. State, 149 Tex. Crim. 167, 192 S.W.2d 446 (1946); Barton v. State, 88
Tex. Crim. 368, 227 S.W. 317 (1921); Fanin v. State, 51 Tex. Crim. 41, 100 S.W. 916 (1907). 
Crawford expressly overruled Barton to the extent it was still viable at the time.  See Crawford, 509
S.W.2d at 584-85.
2. The dissenting opinion in Armstrong relied on this fact as central to the holding in Collins
and distinguished Armstrong on that basis. See Armstrong v. State, 179 S.W.3d 84, 91 (Tex. App.--
Fort Worth 2005, no pet.) (Dauphinot, J., dissenting).