# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00805-CR

**Joshay Richardson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-06-301192, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Joshay Richardson of the offense of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a)(3)(A) (West 2003). Punishment was assessed at 28 years' imprisonment. In a single point of error, Richardson asserts ineffective assistance of counsel. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that, on the night of May 28, 2006, Richardson was at a nightclub in downtown Austin where, he claimed, he had arranged for a musician to perform at the club. The club's owner, Amer Massood, testified that it was "Teen Night," a night in which the club does not serve alcohol, plays music "free of profanity," and closes earlier than usual. At approximately 8:30 or 9:00 p.m., while the club was still open, Massood was outside smoking when Richardson approached him. Massood recounted how Richardson showed him what appeared to be

a contract and claimed that Massood owed him one thousand dollars for arranging that night's entertainment. Massood, who did not deal directly with issues related to entertainment at his club, testified that he had never previously seen Richardson or the contract. Massood informed Richardson that he had "nothing to do with it," and told him to "sort it out with the promoters," the people who scheduled the club's entertainment. Richardson persisted in his demand for the money, and Massood eventually told him to wait until the end of the night and that they would "settle it" then. Massood hoped that this would give him time to speak with one of the promoters and find out what kind of deal had been made with Richardson. Massood testified that Richardson seemed angry and "made this strange motion like he put his hand back to . . . his jeans," but Richardson said nothing further to Massood and walked away.

Later that night, shortly after closing time, Massood entered the club and noticed Richardson inside. This upset Massood, because only employees of the club were supposed to be inside the club at this time. Massood yelled at his security guards, asking them why Richardson was inside. One of the club's "bouncers," Nick Vladasel, told Richardson to leave and attempted to escort him out. Vladasel testified that when he grabbed Richardson, he noticed that Richardson had a gun pointed at his chest.[1] Vladasel backed off, and Richardson then pointed the gun directly at Massood's head. Massood testified that the gun was so close to him that the barrel touched his head. Vladasel testified that Richardson said, "You shut the f*** up and give me the money. Otherwise, I will shoot somebody." At this point, all of Massood's security guards, except for Vladasel, ran outside. Richardson continued to demand that Massood give him the money. Massood testified that

_____

[1] The gun was later identified as a .45 caliber Glock with laser sights.

2

he agreed to pay Richardson, offering to "write him a check." Richardson then grabbed Massood and directed him and Vladasel toward Massood's office, where the club's money was kept.

Inside the office, the club's cashier, Carmen Vera, was counting the money that the club had collected that night. Vera's 15-year-old daughter was also in the office. Vera testified that when Richardson, Massood, and Vladasel entered the office, Richardson pointed the gun first at her daughter and then at her. According to Vera, Richardson told her, "You f***ing whore, give me the money or I'll shoot you right here." Vladasel testified that Richardson also threatened to shoot Vera's daughter. Massood instructed Vera to give Richardson the money, and she did so.

Vera's daughter also testified. She testified that when Richardson entered the office with Massood and Vladasel, Richardson had a gun pointed at Massood's head. She confirmed that Richardson pointed the gun at both her and her mother and that he demanded that her mother give him the money. She also testified that after her mother gave Richardson the money, Richardson "ran out the door."

Richardson fled the scene on foot and was apprehended shortly thereafter by Detective Thomas Hugonnett of the Austin Police Department. Detective Hugonnett testified that when he arrested Richardson, he found a "large wad of cash in his left pocket," approximately $1,200. The gun that Richardson allegedly used in the commission of the crime was recovered in the vicinity of where Detective Hugonnett had been pursuing Richardson.

Detective Robert Perez of the Austin Police Department interviewed Richardson after Richardson's arrest. Detective Perez testified to statements that Richardson made during the interview, including that he was not afraid of Vladasel, that he grabbed Massood by the arm and told

3

him, "You're going to give me my money," and that he was in possession of a firearm during the incident. A videotaped recording of the interview was admitted into evidence.

The jury convicted Richardson of aggravated robbery. Richardson elected to be sentenced by the court. The district court found to be true enhancement paragraphs alleging prior convictions for possession of marihuana, possession of cocaine, and sexual assault. The district court sentenced Richardson to 28 years' imprisonment. This appeal followed.

## DISCUSSION

On appeal, in his sole point of error, Richardson asserts that his trial counsel was ineffective in advancing what he now characterizes as a theory of "self-defense to collect a debt." In fact, trial counsel appeared more precisely to assert a theory similar to the former common-law rule that a creditor who assaults his debtor and compels him to pay his debt cannot be convicted of robbery,[2] coupled with a claim of self-defense based on Richardson's fear for his own safety during the incident. Richardson argues here that he could not have prevailed under such a theory because the law does not recognize a defense of self-defense in aggravated-robbery cases. Thus, Richardson claims, "there can be no plausible professional reason" for counsel's decision to assert one.

We evaluate claims of ineffective assistance of counsel under the two-pronged analysis in *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, Richardson must demonstrate (1) that his counsel's performance was deficient, i.e., it fell below an objective standard of reasonableness, and (2) that Richardson was prejudiced by the deficient performance, i.e., a

---

[2] *See Barton v. State*, 227 S.W. 317, 319 (Tex. Crim. App. 1921), *overruled by Crawford v. State*, 509 S.W.2d 582, 585 (Tex. Crim. App. 1974).

reasonable probability exists that, but for the deficient performance, the result of the proceeding would have been different. 466 U.S. at 687-88, 694; *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005).

Our review of counsel's performance must be highly deferential. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome that presumption. *Id.* We determine the reasonableness of counsel's challenged conduct in context, and view it as of the time of counsel's conduct. *Id.* We commonly assume a strategic motive if any can be imagined. *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Janecka v. State*, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996) (appellate court may not consider on direct appeal any factual assertions that are outside the record). If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on direct appeal. *Ortiz v. State*, 93 S.W.3d 79, 89 (Tex. Crim. App. 2002). In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Moreover, the record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. *Id.* Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

5

Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims. *Torres*, 943 S.W.2d at 475.

Under our deferential standard of review and limited scope of review, we cannot conclude that the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. It is true that a person has no right of self-defense while committing a robbery,[3] nor is there a defense where one commits robbery to collect a debt.[4] Nonetheless, it is possible that trial counsel, faced with overwhelming evidence of Richardson's guilt, was pursuing a strategy aimed at portraying Richardson's actions in the best light possible under the circumstances, perhaps with an eye to sentencing. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3 (West Supp. 2007) ("Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by . . . the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . the circumstances of the offense for which he is being tried, . . ."). In fact, Richardson was ultimately sentenced to 28 years' imprisonment, where the minimum sentence in this case was 25 years and the State had recommended first 50 and then 40 years' imprisonment.

---

[3] *See Evans v. State*, 601 S.W.2d 943, 946 (Tex. Crim. App. 1980); *Dickson v. State*, 463 S.W.2d 20, 23 (Tex. Crim. App. 1971); *Nance v. State*, 807 S.W.2d 855, 863 (Tex. App.—Corpus Christi 1991, pet. ref'd).

[4] *See Crawford v. State*, 509 S.W.2d 582, 585 (Tex. Crim. App. 1974); *Pierce v. State*, 218 S.W.3d 211, 214 (Tex. App.—Texarkana 2007, pet. ref'd); *Armstrong v. State*, 179 S.W.3d 84, 88 (Tex. App.—Fort Worth 2005, no pet.).

In any event, Richardson has failed to demonstrate that a reasonable probability exists that, but for any deficient performance of counsel, the result of the proceeding would have been different. There was overwhelming evidence in this case that Richardson committed the act of which he was accused. Four eyewitnesses testified that Richardson pointed a gun at them, threatened them, and demanded money from them. When Richardson was apprehended, law enforcement recovered approximately $1,200 in cash found on his person. Additionally, the police interviewed Richardson after he was arrested, and he made incriminating statements in the interview that were admitted into evidence. Given these facts, it is difficult to imagine any defensive theory that counsel could have tried which would have changed the result of the proceeding. Nor does Richardson suggest any alternative theory that counsel could have attempted.

We overrule Richardson's sole point of error.

## CONCLUSION

Having overruled Richardson's point of error, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: May 8, 2008

Do Not Publish

7