WOOD BARTON v. THE STATE.

No. 5994.   Decided January 19, 1921.

1.—Assault to Commit Robbery—Intent—Debt—Good Faith—Fraudulent Intent.

Where, upon trial of assault with intent to rob, the evidence raised the issue that, in committing the assault, defendant was acting under a *bona-fide* belief and claim that the prosecutor owed the sum of money for which the check was written, and that for the sole purpose of obtaining the money and applying it to the payment of the debt due him, and that he would not necessarily be guilty of robbery, a requested charge should have been given to the jury presenting this phase of the case.

2.—Same—Rule Stated—Animus Furandi—Bona-fide Claim.

The *animo furandi* is an element of robbery as it is of theft, and both in theft and robbery, the taking of goods upon a *bona-fide* claim of right may negative any intent to steal. Following Smedly v. State, 30 Texas Crim. App., 215, and other cases; qualifying Fannin v. State, 51 Texas Crim. Rep., 45.

3.—Same—Charge of Court—Requested Charge.

Where, the indictment charged a single assault upon two persons jointly, the court should not have charged to convict if the assault was made upon either of them. Following Grantham v. State, 59 Texas Crim. Rep., 556, and other cases.

4.—Same—Continuance—Diligence—Transient Persons.

Where, upon trial of attempt to rob, the defendant immediately applied for proper process for witnesses in distant counties, and followed the same up by other process and used proper diligence to secure the attendance of the witnesses, and their evidence was material, the continuance should have been granted, and the qualification of the trial judge that the witnesses were transient persons, etc., was not justified under the record of the instant case. Following Pearson v. State, 56 Texas Crim. Rep., 607, and other cases.

Appeal from the District Court of Cottle. Tried below before the Honorable J. H. Milam.

Appeal from a conviction of an assault with intent to commit robbery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

S. J. Fires, W. W. Balleu and Chas. R. Black, for appellant.—On question of continuance: Dyer v. State, 47 Texas Crim. Rep., 258, and cases cited in opinion.

On question of charge of court failing to define robbery; Bollen v. State, 48 Texas Crim. Rep., 70; Peacock v. State, 52 id., 436; Barnes v. State, 52 id., 407.

Alvin M. Owsley, Assistant Attorney General, for the State.—On question of court's charge: Long v. State, 83 S. W. Rep., 384; Lem-

mons v. State, 59 Texas Crim. Rep., 300; Swafford v. State, 171 S. W. Rep., 225.

MORROW, JUDGE.—Conviction is for assault with intent to commit robbery. The appellant was the manager of a large farm, and the owner of the farm had secured from southwest Texas a number of Mexicans to aid in picking his cotton, and in doing so the Mexicans had become indebted to him for the expenses of board and transportation. Some of these Mexicans left the appellant and went to work for Green. A controversy between Green and the appellant took place, which was adjusted, according to appellant's theory, by him consenting to the use by Green of some of the Mexicans and the payment by Green to the owner of the farm under appellant's control of sums of money that had been earned by the Mexicans while in the employee of Green, amounting, according to appellant's theory, to $150. Subsequently, the appellant and Green met in the presence of Eldridge, and according to the State's theory, appellant demanded the payment and presented a pistol and threatened to kill Green if the payment was not made; and on the statement by Green that he had no money, he was struck by the appellant with a pistol. Eldridge volunteered to give a check for the amount, and appellant said, according to Eldridge's testimony: "Make it for $150; it will just take that much to pay my fine." "If you hold the check up, I will kill you." The appellant at the time had his pistol drawn on Eldridge. This phase is controverted by the appellant, who claims that Eldridge voluntarily proposed to pay the $150 which appellant claimed that Green owed him and that appellant acquiesced but used no threat or force.

The count in the indictment upon which the conviction was had charged that appellant made an unlawful assault upon Green and Eldridge, and by violence to each of them, made an attempt "to fraudulently take from the possession of the said A. A. Green and J. E. Eldridge and each of them, the personal property." The issues were submitted to the jury upon the theory that if Green was indebted to the appellant or to his principal or had promised to pay them the amount earned by the Mexicans and if there was an attempt to compel the payment by assault or by violence or putting in fear, a conviction should result. The correctness of this theory is combated by the appellant by an exception to the main charge and to the special charge given at the request of the State. The matter was presented to the trial court and is here brought forward to review.

In our opinion, if the appellant, in acting under a *bona fide* belief and claim that Green owed the sum of money and for the sole purpose of obtaining the money and applying it upon the debt due he made an assault, or threats, he would not necessarily be guilty of robbery, although in making the attempt to obtain the payment he used force or threats which, in the absence of the claim of right in good faith made, would have amounted to an assault with an intent to rob; and whether

88 Tex.—24

his claim was made in good faith or as a pretext to cover fraudulent intent was a question for the jury.

The *animus furandi*. is an element of robbery as it is of theft, and both in theft and robbery the taking of goods upon a *bona fide* claim of right may negative any intent to steal. Russel on Law of Crimes, Seventh English Edition, Vol. 2, page 1129; Bishop's "New Criminal Law," Vol. 2, Sec. 1162a. This principle has been applied to the forcible retaking of specific property in this and other jurisdictions. Smedly v. State, 30 Texas Crim. App., 215; Barnes v. State, 96 Texas Crim. Rep., 128; Wolf v. State, 14 Texas App., 210; Higgins v. State, 49 Texas Crim. Rep., 350; Temple v. State, 86 Texas Crim. Rep., 219, 215 S. W., 965; Glenn v. State, 49 Texas Crim. Rep., 349; Smith v. State, 81 S. W., 712; Bowles v. State, 58 Ark., 35; State v. Wasscn, 126 Iowa, 320; Tripplett v. Commonwealth, 122 Ky., 35; People v. Hughes, 11 Utah, 100; State v. Denge, 124 Wash., 49; Brown v. State, 28 Ark., 126; People v. Vice, 21 Cal., 344; Driscoll v. People, 47 Mich., 413; Young v. State, 34 Texas Crim. Rep., 290.

The judicial decisions are practically uniform that the same principle applies to the forcible collection of a debt. In Russell on Crimes, page 1129, *supra,* it is said: "A creditor who assaults his debtor and compels him to pay his debt cannot be convicted of robbery." In the English case of Regs. v. Hemmings, 4 F. & F., 50, the prisoner was indicted for robbery and it was shown that the check or money forcibly obtained was owing to the prisoner by the prosecutor and that the prisoner's motive was to collect his debt. He was held not guilty of robbery. Many decisions harmonizing with this view are found. State v. Hollyway, 41 Iowa, 200; State v. Brown, 104 Mo., 365; State v. Carmans, Tappan (Ohio), 65; Gables v. State, 68 S. W., 288; Crawford v. State, 90 Ga. 701; McDaniel v. State, 47 Amer. Dec., 93. There are in the case of Fanin v. State, 51 Texas Crim. Rep., 45; 10 L. R. A. (New Series), 745, expressions varying from the views stated, but they are out of harmony with the weight of authority, both English and American. From what we have said, it follows that upon another trial the question of appellant's intent should be determined on appropriate instructions, making the jury know that if appellant acted alone upon the intent to collect the debt, which he in good faith believed to be owing, his offense would not be an assault to commit robbery.

In view of certain special charges that were given, we would not feel justified in reversing this case upon the complaint made of the manner in which the sixth count in the indictment was submitted to the jury. That count manifests the intention upon the part of the pleader to charge a single assault upon Green and Eldridge jointly. This interpretation seems to be emphasized by the fact that in the fourth and fifth counts an assault to rob Green and Eldridge separately is charged, and upon the trial was submitted to the jury. The sixth count should, in our opinion, be treated as charging a single assault

upon both Green and Eldridge. That is to say, that part which sub-
mitted that count which authorized conviction, if the assault was made
upon either of them, should be eliminated. Upon the subject, see
Grantham v. State, 59 Texas Crim. Rep., 556, 129 S. W., 839; Franklin
v. State, 53 Texas Crim. Rep., 547, 110 S. W., 909; Hernandez v.
State, 63 S. W., 320.

The date set for the trial was less than a week after the filing of the
indictment. Immediately after he was indicted, the appellant obtained
and promptly forwarded to the proper officers subpoenas for witnesses
in Hidalgo and other counties in the southwestern portion of the State
and great distances from the place of the trial. Because of their ab-
sence on the day the case was called, and because of the statement of
the sheriff in making the return that some were not served for lack
of time and that some were in an adjoining county the case was post-
poned for fifteen days. New process was at once issued and for-
warded, and when the case was again called for trial the witnesses
were not present, but there was received the day before a letter from
the sheriff stating that the witnesses were in Harris County, and sub-
poenas at the instance of appellant were immediately issued thereto.
The materiality of the testimony of these witnesses was obvious and
not controverted. They were to support the theory of the appellant
that instead of acting as aggressor he was acting in self-defense upon
threats of Green to take his life and by hostile demonstration at the
time. These issues were submitted to the jury, but mainly upon the
appellant's testimony. The absent witnesses would have supported
him. From the qualification of the trial judge it appears that the wit-
nesses were Mexicans who had been brought from southwest Texas to
pick cotton. This also appears from the record, but the application for
continuance states the residence of the witnesses, naming the counties
and localities in southwest Texas, and the returns of the officers did
not indicate that the witnesses were not residents of the counties nam-
ed, but so far as these returns and letters from the sheriff bear upon
the subject, they indicate the contrary. The opinion stated in the
judge's qualification that they were transient persons and that there
was no probability of securing their attendance we think did not jus-
tify his action in refusing a continuance. Richardson v. State, 28
Texas Crim. App., 218; Leonard v. State, 53 Texas Crim. Rep., 190;
Pearson v. State, 56 Texas Crim. Rep., 607.

The developments upon the trial going to show that the witnesses
named in the application for continuance were in a position to have
known the facts attributed to them in the application, and the absence
of anything connected with the motion for new trial, casting doubt
upon their willingness to give the testimony, emphasizes the error in
overruling the application, and, in our judgment, rendered it incumbent
upon the court to grant a new trial. Mason v. State, 57 Texas Crim.
Rep., 319; Branch's Ann. Tex. Penal Code, Sec. 319. Other matters

referred to in the voluminous records will doubtless not occur in another trial. The errors pointed out require a reversal of the judgment, and it is so ordered.

*Reversed and remanded.*