## COMMERCIAL CASUALTY INS. CO. v. GOODE.

### No. 10926.

Court of Civil Appeals of Texas. Galveston.

Jan. 4, 1940.

Rehearing Denied Jan. 25, 1940.

Wood, Morrow, Gresham & McCorquodale, of Houston, for appellant.

Lockhart, Hughes & Lockhart and H. C. Hughes, all of Galveston, for appellee.

GRAVES, Justice.

Under the disposition determined upon for this appeal, no written opinion is required of this court; in deference, however, to counsel for both sides, who have so painstakingly briefed and argued it, this very general statement of the main grounds upon which an affirmance of the trial court's judgment will be ordered is made:

The appeal is from an $810 judgment in Mrs. Goode's favor against the Insurance Company rendered by the county court of Galveston County, sitting without a jury, as for the aggregate found to be due her as the beneficiary thereunder (inclusive of statutory penalties and attorney's fees) upon two accident insurance policies on the life of her deceased husband for $250 each. Section C of both policies contained this provision:

"Against loss of life, $250.00 * * *

"At the hands of any burglar, highwayman, or robber when robbing the insured by force. * * *

"This is a limited policy and provides indemnity for loss of life, limb, limbs, sight, or time by accidental means, only to the extent herein limited and provided."

From evidence presented by the appellee alone, appellant having offered none, the Court found on the facts that the husband had so lost his life, thereby maturing in the wife's favor the legal obligation entailed by that part of the contracts.

The trial court supported its decree by findings of both fact and law, a resume of which—thought to be sufficient for the purpose—is this:

### "Findings of Fact.

* * *

"2. I find that on or about the 12th day of June, 1938, Ernest Earl Goode accidentally lost his life through pistol shots at the hands of Pete Calandra, Roland Tyler, and —— Sutton, while the above named parties were robbing the aforesaid Ernest Earl Goode by force; that said robbery was accomplished with a pistol, and was for the purpose of robbing the said Ernest Earl Goode of the keys which he carried, of which he was the lawful bailee.

"3. I find that the aforesaid Pete Calandra, Roland Tyler, and —— Sutton, took said keys for all * * * purposes for which they might have use for them in opening said jail and escaping therefrom, * * * and at the time of such taking they had no intention, bona fide or otherwise, of returning them.

"4. I further find that after the jail doors had been opened through the use of the keys so unlawfully and feloniously taken, that one of the prisoners who robbed Goode of said keys, dropped same close to the outer door of said jail, * * * after they had violently assaulted another jailer, Lindgren.

"5. I further find that the intention to rob was complete at the moment that said keys were taken from the deceased, Ernest

Earl Goode, and that said Ernest Earl Goode lost his life while being robbed by said Pete Calandra, Roland Tyler, and ————Sutton. * * *

"Conclusions of Law.

"1. I conclude as a matter of law, based on my Findings of Fact, and from all the evidence, that Ernest Earl Goode was killed while being robbed of the keys of the county jail of Galveston County, Texas, which he held as lawful bailee, and that the felonious and unlawful intention to rob was in the minds of Pete Calandra, Roland Tyler, and ———— Sutton at the time of taking said keys, and that there is nothing in the testimony which would remove such conclusion."

■ Through a number of propositions appellant contends that judgment should have been rendered in its favor below upon these two grounds:

"(1) Even assuming, * * * that Tyler, Sutton and Calandra, acting together, killed the deceased, Goode, with the intention of taking from him his keys, reasonable minds cannot differ in the conclusion that they did not take them with the intention of *permanently* appropriating them to their own use and benefit and depriving the owner of the value of them, and, consequently, their act in taking them did not constitute robbery within the meaning of the provisions of the policies.

"(2) In the alternative, plaintiff failed to discharge the burden placed upon her to prove that the insured was killed at the hands of a robber, while the latter was robbing him by force."

As will be noted, both its grounds rest alone upon its contention that there was no evidence supporting the quoted fact-findings upon which the decree adverse to it was rendered—not that any one of them was so against the great weight and preponderance of the evidence as to render it clearly wrong.

Further, its main dependence for authority is put upon the holding of this court in Home Insurance Company v. Brewton, 46 S.W.2d 359, and that of the Court of Criminal Appeals in Smith v. State, 66 Tex.Cr. R. 246, 146 S.W. 547; the rationale of those two decisions being, in its own language, "that reasonable minds could not differ in the conclusion that there was no intention to permanently appropriate the property involved and that consequently, as a matter of law, no theft was committed,"

which it insists must also be the finding in this instance.

This court cannot see eye to eye with appellant in its very ably stated position; upon the contrary, it concludes the learned trial court was correct, that its findings, in so far as necessary to support the judgment rendered, did have sufficient support in the testimony, and that its conclusions of law based thereon are not erroneous.

While the direct proof was somewhat scanty, it is thought the very definitely established circumstantial chain enabled the court—by legitimate inference from what was shown—to properly find the corpus delicti of robbery within the meaning of Penal Code, Article 1408 to have been established; in other words, that the gist of that offence, so insured against by the policies in suit—that is, the intent at the very moment of the taking with which the keys of the dead jail-guard were appropriated by others from his possession—was a question of fact, and that this court is unable to say there was no evidence supporting the quoted findings thereon; indeed, that is concededly the applicable rule—if it fits this cause, as it is thought to do—as reflected in such holdings as these: Hartman v. State, 85 Tex.Cr.R. 582, 213 S.W. 936 at pages 938, 939; Barton v. State, 88 Tex. Cr.R. 368, 227 S.W. 317, 13 A.L.R. 147; Escobedo v. State, 88 Tex.Cr.R. 277, 225 S. W. 377; Schultz v. State, 30 Tex.App. 94, 16 S.W. 756; Wilson v. State, 18 Tex.App. 270, 274, 51 Am.Rep. 309; Harris v. State, 29 Tex.App. 101, 14 S.W. 390, 25 Am.St. Rep. 717; Galloway v. State, 126 Tex.Cr.R. 294, 71 S.W.2d 871; Cupit v. State, 130 Tex.Cr.R. 40, 92 S.W.2d 244; 16 C.J., 76.

It is thought the Brewton and Smith cases, upon which appellant so strongly relies, may be distinguished from this one, in that in both instances the courts determined the evidence to clearly show there was no purpose to permanently appropriate the things taken by those accused to their own use and benefit; whereas, in this instance it indisputably appears that these three named persons, if they took those keys at all, must reasonably have intended to completely appropriate them to the only permanent or individual use they reasonably could have had in mind at the moment —that is, to unlock that jail with.

Our courts of exclusive criminal jurisdiction have so authoritatively classified the differences which this court thinks exist between the cause at bar and the two so

relied upon by appellant, that it is only deemed necessary to cite them, those most directly apropos being Harris v. State, 29 Tex.App. 101, 14 S.W. 390, 25 Am.St.Rep. 717, and Wilson v. State, 18 Tex.App. 270, 274, 51 Am.Rep. 309; indeed, the Wilson case, in which a brace was taken from a nearby blacksmith-shop for the purpose of opening and robbing a store, and then abandoned in the near vicinity, is thought to present a closely analogous situation; there the court, after overruling the State's insistence that the trial court's failure to instruct the jury on the question of intent had been harmless, reiterated that it had been a matter of fact that should have been submitted on a proper inquiry; whereas, as already indicated, in both the stated causes upon which appellant grounds its defense, automobiles had been taken and returned prior to the arrest, under affirmative showings that the takers thereof had not intended to permanently appropriate them at all, but at the very moment of the taking had in mind only a transitory use thereof—hence, that there was a positive showing on the facts that the felonious intent required by the penal law was not present.

■ Here, on the other hand, there was nothing at all to the contrary of the facts and circumstances, together with the legitimate inferences therefrom, that were so set out in the trial court's findings; those very circumstances themselves speak louder than words to the well-nigh inevitable effect that the taking of these jail-keys from the dead body of the appellee's insured had been accompanied with the intent at that very moment to appropriate them to the uses of the takers—that is, as a means of escape from that jail; wherefore, under our penal statute, and contrary to what would have been the rule at common law, the controlling principle is thus stated by the Court of Criminal Appeals in the Harris case, supra [29 Tex.App. 101, 14 S.W. 391, 25 Am.St.Rep. 717]: "'The doctrine is that any removal, however slight, of the entire article, which is not attached either to the soil or to any other thing not removed, is sufficient, while nothing short of this will do. Therefore, if the thief has the absolute control of the thing but for an instant, the larceny is complete.' 2 Bish. Crim.Law, (7th Ed.) §§ 794, 795. * * * With us the essential element of theft is the fraudulent taking (Pen.Code, Art. 724), and it is expressly provided that 'to con-

stitute "taking" it is not necessary that the property be removed any distance from the place of taking. It is sufficient that it has been in the possession of the thief, though it may not be moved out of the presence of the person deprived of it; nor is it necessary that any definite length of time shall elapse between the taking and the discovery thereof,—if but a moment elapse, the offense is complete.'"

Further discussion is deemed unnecessary, interesting as the subject is, since no extended opinion is herein undertaken.

The judgment will be affirmed.

Affirmed.