Armstrong v. State

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-183-CR

STEVEN DOUGLAS ARMSTRONG APPELLANT

A/K/A STEVEN D. ARMSTRONG 

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

A jury convicted Appellant Steven Douglas Armstrong a/k/a Steven D. Armstrong of capital murder, and the trial judge imposed an automatic life sentence, the State having waived the death penalty.  Armstrong brings two issues on appeal, contending that the trial court committed charge error.  We affirm. 

Background Facts

On January 23, 2003, Live Oak police stopped Armstrong while he was leaving an area known for burning stolen cars.  The police searched the area from which Armstrong had been seen leaving and found a Cadillac belonging to the complainant, Christopher Palmer.  After the Live Oak Police Department notified the Fort Worth Police Department that it had found the car, Fort Worth police officers were sent to Palmer’s house.  After entering Palmer‘s house, the police discovered Palmer‘s body with multiple stab wounds.  According to Armstrong’s statement, he went to Palmer’s house to collect on a debt, and the two began to fight.  Defeated, Palmer stopped fighting but refused to give Armstrong the money that he owed him.  Determined to get his money, Armstrong then went to the kitchen, grabbed a knife, and told Palmer that he was serious, and that the best thing for him to do was to give Armstrong the money.
(footnote: 1)  Palmer lunged and swung at Armstrong.  Armstrong claims that only after Palmer began lunging and swinging at him did he stab Palmer.  After stabbing Palmer multiple times,  Armstrong removed money and valuables from the home and drove away in Palmer’s Cadillac.  At trial, Armstrong pled not guilty to capital murder.  The jury found Armstrong guilty of capital murder, and the trial court sentenced him to life in prison, the State having waived the death penalty. 

In his first issue, Armstrong argues that the trial court erred in failing to instruct the jury to consider the lesser included offenses of murder, aggravated robbery, and aggravated assault.  He also argues that the trial court erred in failing to instruct the jury on the defense of self-defense.  In his second issue, he again argues that the trial court erred in failing to instruct the jury to consider self-defense. 

Lesser Included Offenses

To determine whether a jury must be charged on a lesser included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  The first step is to decide whether the offense is a “lesser included offense” as defined in article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.  A lesser included offense is defined both in terms of the offense charged and the facts of the case:  “An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann
. art. 37.09(1). Therefore, our analysis of whether an offense is a lesser included offense of the charged offense must be made on a case-by-case basis.  
Bartholomew v. State
, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); 
Day v. State
, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh'g).  It does not matter if the charged offense can be established on a theory that does not contain the lesser offense; the issue is whether the State, when presenting its case to prove the offense charged, also includes proof of the lesser included offense as defined in article 37.09.  
See Bartholomew
, 871 S.W.2d at 212; 
Broussard v. State
, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).  Second, some evidence must exist in the record that would permit a jury to rationally find that if Armstrong is guilty, he is guilty only of the lesser offense.  
Rousseau v. State
, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993);
 Royster v. State
, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981). 

The evidence must be evaluated in the context of the entire record. 
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense.  
Id.
  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id.
  If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.  
Id.; see also Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).

The trial court instructed the jury that it could convict Armstrong of capital murder if the jury found that he had committed murder in the course of committing robbery or burglary of a habitation.  The State does not challenge Armstrong’s contention that murder, aggravated robbery, and aggravated assault are lesser included offenses of capital murder in the course of committing robbery.  The issue here is whether there is evidence to raise the lesser included offenses.  

Aggravated Assault and Aggravated Robbery

In another capital murder case, the Texas Court of Criminal Appeals held that “[a] murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide.”  
Jackson v. State
, 992 S.W.2d 469,
 475 (Tex. Crim. App. 1999); 
see also Forest v. State
, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999).  In the case before us, Armstrong does not dispute causing the complainant’s death; there is no evidence that the complainant suffered a lesser form of serious bodily injury.  
See Jackson
, 992 S.W.2d at 475. Consequently, there is no evidence that Armstrong is guilty, if at all, only of aggravated assault.  Armstrong was therefore not entitled to an instruction on aggravated assault.  

Additionally, there is no evidence that the homicide in the case before us was anything other than intentional.  Consequently, there is no evidence that Armstrong is guilty, if at all, only of aggravated robbery.  
See 
Tex. Penal Code Ann.
 §§ 29.02(a)(1), 29.03 (Vernon 2003) (allowing an aggravated robbery conviction if actor recklessly caused serious bodily injury), 
Texas Penal Code Ann
. § 1.07(46) (Vernon Supp. 2004-05) (including bodily injury that causes death within the definition of “[s]erious bodily injury”); 
see also Jackson
, 992 S.W.2d at 475.  He was therefore not entitled to an instruction on aggravated robbery. 

Murder

Similarly, we must determine whether there is evidence that Armstrong is guilty, if at all, only of murder, not capital murder.  
Here, even if we take as true Armstrong’s own version of the events, he is not entitled to the lesser included charge of murder, because “[a] creditor who assaults his debtor to compel him to pay a debt can be convicted of robbery in this State.”  
Frazier v. State
, 342 S.W.2d 115, 116 (Tex. Crim. App. 1961); 
see also Jones v. State
, No. 01-90-00460-CR, 1995 WL 397045, at *6 (Tex. App.—Houston [1st
 Dist.] July 5, 1995, pet ref’d) (not designated for publication); 
Collins v. State
, 800 S.W.2d 267, 269 (Tex. App.—Houston [14th
 Dist.] 1990, no pet.).   Armstrong’s own statement reflects that he went to Palmer’s house to collect on a debt, that Palmer denied owing him money, that they fought, and that at some point during the scuffle, he grabbed a knife and told Palmer, that he was serious, and that the best thing he could do would be to give Armstrong the money.  This is evidence of robbery.  
See Frazier
, 342 S.W.2d at 116; 
see also Jones
, 1995 WL 397045, at *6; 
Collins
, 800 S.W.2d at 269.
  It does not matter that Armstrong claims that he did not form the intent to take money and other items of value from Palmer’s home until after he killed Palmer, for his own statement establishes that Palmer was killed in the course of Armstrong’s attempt to collect a debt by force, i.e., robbery. 
 Consequently, there is no evidence that Armstrong is guilty, if at all, only of murder.  We hold that under the circumstances of this case, Armstrong was not entitled to an instruction on murder. 

Self-Defense

Finally, Armstrong argues that even if he committed theft he was nevertheless entitled to raise the defense of self-defense as to the intentional mental state required by the capital murder statute in causing the death.  
See 
Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon Supp. 2004-05). Although Armstrong argues that the complainant had a knife, the record does not support his assertion.  The record reveals no evidence of conduct by the complainant that would justify Armstrong’s deadly force.  A person is entitled to an instruction on self-defense only on those issues raised by the evidence.  
Ferrel v. State
, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). The trial court, therefore, did not err in denying Armstrong’s requested self-defense charge.  We overrule Armstrong’s first and second issues.

Conclusion

 Having overruled Armstrong’s two issues, we affirm the trial court’s judgment.   

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  August 4, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-183-CR

STEVEN DOUGLAS ARMSTRONG APPELLANT

A/K/A STEVEN D. ARMSTRONG 

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

The majority confuses the standard for analysis of the sufficiency of the evidence with the standard for determining whether a jury instruction on a lesser included offense is warranted.  Because the majority holds that Appellant is not entitled to a jury charge on murder despite the evidence that the theft was an afterthought and despite the evidence that the complainant owed Appellant $300 worth of the property, including the twenty dollars Appellant took from the body and $280 worth of the remaining items, I must respectfully dissent from the majority’s holding that Appellant was not entitled to a jury instruction on the lesser included offense of murder.

When there is evidence from any source that negates or refutes the element establishing the greater offense, if it could lead a rational juror to acquit the defendant of the greater offense while convicting him of the lesser included offense, we must take it as true in determining whether Appellant was entitled to the requested jury instructions.
(footnote: 2) The majority sets out the correct standard of review but, unfortunately, does not employ it in its analysis.  The issue in this case is whether there is any evidence which, if believed, could lead a rational juror to conclude that (1) the intent to steal was formulated after the murder, (2) consequently, there was no robbery,
(footnote: 3) (3) consequently, there was no murder in the course of committing robbery, the type of capital murder at issue,
(footnote: 4) and (4) therefore Appellant is guilty, if at all, only of murder.
(footnote: 5)  If there is such evidence from any source, no matter how credible or weak, then Appellant was entitled to an instruction on murder.
(footnote: 6)
 A person commits capital murder if he intentionally causes the death of another person in the course of committing or attempting to commit robbery.
(footnote: 7)  The elements of robbery are that, in the course of appropriating property without the owner’s effective consent and with intent to deprive the owner of that property (that is, in the course of committing theft), a person “(1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.”
(footnote: 8)  “‘[O]wner’ means a person . . . who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.”
(footnote: 9)  In criminal law the issue of ownership, an element of the offense, is a question of fact for the jury to determine.
(footnote: 10) 

Robbery requires assault in the course of committing theft.
(footnote: 11)  "In the course of committing theft" means during an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.
(footnote: 12)  The Texas Court of Criminal Appeals has recently reaffirmed the principle that “[f]or a murder involving a theft to constitute a capital murder committed in the course of a robbery, the intent to rob must be formulated before or at the time of the murder.”
(footnote: 13)  The elements at issue here are who owned the property taken and when did Appellant form the intent to take the complainant’s property?

The record reflects that Appellant made at least three statements to police officers.  One statement was written, one was an oral, recorded statement, and the other was oral but not recorded.  There is testimony in the record relating the substance of the unrecorded statement.  

Once inside the complainant’s house, Appellant argued with the complainant about the complainant’s refusal to pay Appellant the approximately $300 he owed him.  Appellant demanded his money, and the complainant said that he was not going to give him the money.  The two men were yelling and angry, and Appellant punched the complainant with his fist.  The complainant retaliated, and the men wrestled until Appellant overcame the complainant.  Appellant said, 

[A]t this point if I . . . went this far . . . came to his house beat him up . . . as far as money I was gonna get the money . . . you know . . . so . . . start what I finish . . . so I went to his kitchen pulled out the knife and uh . . . I mean I wasn’t gonna do nothing with it . . . I was just gonna tell him you know . . . I’m serious man you need to give me my money . . . you know . . . had that knife in my hand . . . I mean the best thing for you to do is just give me the money . . . that’s what I . . . basically I was telling him I wasn’t gonna do nothing with it I promise . . . .

Appellant reiterated that he was not going to use the knife and described the complainant’s actions:

[A]nd then he composed himself and got up near me . . . no one can come in here (unintelligible) pull out a knife on me . . . I try to be an opponent to violence now days . . . now we have to get in to all this . . . I didn’t wanna . . . I came over here just to get my money and be on my way . . . and uh . . . so he swung . . . and uh . . . you know . . . then he kept lunging at me you know swinging . . . I just reacted . . . so I stuck him with the knife . . . .  And it was a steady struggle . . . . 

 After Appellant stabbed the complainant to death, he took twenty dollars from the complainant’s pocket.  Because the twenty dollars fell far short of the nearly $300 that Appellant contended that the complainant owed him, Appellant took additional property to make up the difference.  He took the complainant’s television set, a DVD player, some movies, a cell phone, and some marihuana.  When he left, Appellant drove off in the complainant’s Cadillac.  

There is no direct evidence of the value of the property Appellant took from the complainant.  A jury, however, could reasonably conclude that the combined value of all the items exceeded $300, the amount that Appellant claimed the complainant owed him.  Because the jury could reasonably conclude that the value of the property taken exceeded the value of the claimed debt, it could also reasonably conclude that the excess property was stolen. Again, Appellant admitted to taking the property.  

Appellant claimed ownership of the property he first took, that is, the twenty dollars he took from the complainant’s body.  His statement, taken as true, made clear that the complainant was refusing to return the money belonging to Appellant.  If the complainant was not the owner, then there could be no theft and, consequently, no robbery.

Our sister court in Houston addressed the issue of whether debt collection constitutes theft in the context of a shooting in the course of collecting a debt in 
Colllins v. State
.
(footnote: 14)  The 
Collins
 court stated that, where the defendant claimed the complainant owed him thirty dollars that he had spent repairing her car, demanding payment with a shotgun was not the legal method of exercising a lien.
(footnote: 15)  In the first place, the Houston court announced, the lien should be exercised against the car, not against the debtor.
(footnote: 16)  In the second place, the court claimed, force may not be used to collect a debt.
(footnote: 17)  The
 Collins
 court opined, 

To hold that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute a robbery would be establishing a dangerous precedent, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence.  This is contrary to the policy of our form of government.  
Crawford v. State
, 509 S.W.2d 582 (Tex. Crim. App. 1974); 
Henderson v. State
, 149 Tex. Crim. 167, 192 S.W.2d 446 (Tex. Crim. App. 1946).
(footnote: 18)

The 
Collins
 opinion turns, in part, on the fact that the debt was based on unliquidated damages.  Unfortunately, the 
Collins 
court does not cite us to authority to explain why the taking of an agreed sum of money owed is theft.  That is, the 
Collins
 court does not explain how it reaches the theft element of aggravated robbery to create a robbery instead of aggravated assault. Additionally, the 
Collins 
court does not explain whether demanding return of readily identifiable property, such as an automobile owned by the defendant or a handgun registered to the defendant, would be analyzed in the way the court analyzed the exercise of a lien.  

In 
Crawford v. State
,
(footnote: 19) Presiding Judge Onion was faced with a situation similar to the situation this court now considers and discussed the question of whether a creditor’s assault upon a debtor constitutes robbery:

Appellant contends that although some later opinions, without mention of 
Barton
, have reverted to the 
Fanin
 holding, 
Barton
 has not been overruled and is still viable
(footnote: 20) and is here controlling.

Even if
 Barton
 is alive and well, as appellant contends, and even if the fact situation in the instant case can be stretched to cover a creditor-debtor situation, the appellant cannot prevail.

In 
Bass v. State
, it was written:

We think that the principle involved in the 
Barton
 case does not avail one who takes not only property which he claims but other property at the same time.  The appellant says he claims only $3.85, but admits taking $20.  

In the instant case the appellant paid the complainant's bill of $14.40 without request.  If a creditor-debtor relationship was established, the money actually taken at the time of the alleged offense was far in excess of $14.40.

Still further, to eliminate any confusion in the prior holding of this court, we overrule 
Barton v. State
.
(footnote: 21)

Unfortunately, the 
Crawford 
court did not completely answer the question of whether a creditor's assault upon a debtor for the purpose of collecting a debt is robbery.  We do not know whether taking by force the amount owed or less than the amount owed is robbery.  The case now before this court differs from 
Crawford 
in a significant circumstance.  The complainant in 
Crawford
 was in fear of death or bodily injury during the entire transaction, including both the time the defendant took what he claimed he was owed and the time he took more than he was owed.  
Crawford
 turns on the fact that by taking more than he was owed, the defendant committed theft and therefore robbery.
(footnote: 22) 

Consequently, Appellant’s statement raises the issue of whether the complainant owned up to $300 of the property taken.  It also raises the issue of when Appellant decided to take more than he was rightfully owed.

According to his statement, Appellant stabbed and killed the complainant while he and the complainant were fighting because the complainant refused to repay money he had borrowed from Appellant.  Appellant’s statement makes clear that the fight was not a struggle over the money and did not involve an attempt by Appellant to wrest the funds from the complainant or to physically force the complainant to hand over the money.  Appellant had gone to the complainant’s apartment because he was trying to collect the money the complainant owed him.  After Appellant saw that the complainant was dead, he looked in the complainant’s pockets for the money that the complainant owed him.  

A reasonable juror could conclude from Appellant’s statement that only after Appellant discovered that the complainant had only twenty dollars in cash did he decide to take the complainant’s other property and formulate the intent to steal. That is, a reasonable juror could conclude that the intent to steal was formulated after the murder and was, therefore, an afterthought.  

As I understand the statutes and caselaw, although Appellant committed murder under this scenario raised by his statement admitted into evidence, he did not commit the murder in the course of committing theft because the taking of the property of another did not occur until he took property exceeding the value of the debt.   Consequently, I believe that Appellant’s statement raised the issues of ownership of the $300, whether the murder was committed in the heat of battle rather than in the course of committing theft, and whether the intent to steal arose well after the murder.  If Appellant’s statement is taken as true, which we must do in determining whether a lesser included offense instruction is warranted,
(footnote: 23) there could be no robbery and no capital murder based on robbery.

The majority may be correct in concluding that the evidence is sufficient to support the jury’s verdict.  But Appellant’s point on appeal does not challenge the sufficiency of the evidence.  The majority does not explain how Appellant’s statement does not raise the issue of the ownership element of theft.  The majority also does not explain how Appellant’s statement does not raise the issue of whether the intent to commit theft arose after the murder was completed.  While we may be in sympathy with the policy arguments advanced by the 
Collins
 court, we are restrained by the clear language of the robbery statute.
(footnote: 24)  Robbery requires theft.
(footnote: 25)  Capital murder as validly charged in this case requires intentional murder in the course of committing robbery, not as an incident to robbery.
(footnote: 26)  Although we might feel that the statute should be rewritten, it is not within our province to do so.
(footnote: 27)  That authority rests solely with the legislature.
(footnote: 28)
 Although the jury was free to believe or disbelieve the relevant portion of Appellant’s confession, the statement constitutes some evidence that the murder was not committed in the course of committing robbery.  The issues before us are whether Appellant was entitled to a lesser included offense instruction on murder and whether the trial court’s failure to give him that instruction entitles him to a new trial in this case.  I would hold that the answer to both of those questions is yes and reverse the case for a new trial on the merits.  Because the majority affirms the trial court’s judgment, I dissent.

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED:  August 4, 2005

FOOTNOTES
1:
The record contains a transcript presented to the jury which reflects that Armstrong stated the following in his audio taped statement: 

at this point if I . . . went to this far . . . came to his house beat him up . . . as far as money I was gonna get the money . . . you know . . . so . . . start what I finish . . . so I went to his kitchen pulled out the knife and uh . . . I mean I wasn’t gonna do nothing with it . . . I was just gonna tell him you know . . . I ‘m serious man you need to give me my money . . . you know . . . had that knife in my hand . . . I mean the best thing for you to do is just give me the money . . . that’s what I . . . basically I was telling him I wasn’t gonna do nothing with it I promise . . . . 

2:
See Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992). 

3:
See 
Tex. Penal Code Ann.
 § 29.02(a) (Vernon 2003).

4:
Id
. 
§ 19.03(a)(2) (Vernon Supp. 2004-05).  Although Appellant was indicted for and the jury was charged on capital murder in the course of burglary and capital murder in the course of robbery, the majority apparently concedes that there is evidence in the record that Appellant entered the complainant’s home with his effective consent and no evidence to the contrary.

5:
See Schweinle
, 915 S.W.2d at 19; 
Saunders
, 840 S.W.2d at 391-92.

6:
See 
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); 
Schweinle
, 915 S.W.2d at 19; 
Saunders
, 840 S.W.2d at 391-92.

7:
Tex. Penal Code Ann.
 § 19.03(a)(2).

8:
Id.
 § 29.02(a).

9:
Id
. § 1.07(a)(35)(A) (Vernon Supp. 2004-05).

10:
Freeman v. State, 
707 S.W.2d 597, 604-605 (Tex. Crim. App. 1986).

11:
Tex. Penal Code Ann.
 § 29.02.

12:
Id.
 § 29.01(1).

13:
Herrin v. State
, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002)
 (citing 
Conner v. State
, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)). 

14:
800 S.W.2d 267, 269 (Tex. App.—Houston [14th Dist.] 1990, no pet.).

15:
Id.

16:
Id.

17:
Id.

18:
Id.

19:
509 S.W.2d 582, 584-86 (Tex. Crim. App. 1974).

20:
In Wharton's Criminal Law, Vol. 2 Sec. 550, p. 250, it is said:

Except in a few jurisdictions, a creditor's taking of money from his debtor to satisfy or secure the obligation, either by force or intimidation, is not regarded as robbery, the generally accepted doctrine being that the requisite animus furandi cannot exist when the property is taken under a bona fide claim of right.  The rule is different however, in some jurisdictions, as to the forcible taking of property for the purpose of collecting uncertain, unliquidated damages, and such a taking will support a prosecution for robbery.

21:
Crawford
, 509 S.W.2d at 584-86 (selected footnotes and citations omitted; footnotes in original).

22:
See id.
 at 586.

23:
See Schweinle
, 915 S.W.2d at 19; 
Saunders
, 840 S.W.2d at 391-92.

24:
See Boykin v. State
, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

25:
Tex. Penal Code Ann.
 § 29.02(a).

26:
See id.
 § 19.03(a)(2).

27:
See Boykin
, 818 S.W.2d at 785.

28:
See id.

COMMENTS AND ANNOTATIONS
Comment 1:
Majority by Justice McCoy

Dissent by Justice Dauphinot