**Clarence PIERCE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00266–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 24, 2007.

Decided Feb. 2, 2007.

Jeff Harrelson, Harrelson Law Firm, for appellant.

Nicole Habersang, Asst. Dist. Atty., Texarkana, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

A Bowie County jury found Clarence Pierce guilty of aggravated robbery and assessed an enhanced punishment of thirty years' confinement. He now appeals this conviction, arguing that the record cannot support his conviction as a party to aggravated robbery when it shows only that he accompanied a creditor who was collecting a debt. We reject his position, overrule his points on appeal, and affirm his conviction.

## I. FACTUAL BACKGROUND

The record shows that a dispute over money arose between Mike Simpson and Greg Gideon following a minor automobile accident in which Gideon backed into Simpson's vehicle in May 2002. Simpson was very insistent that Gideon pay for the damages he had caused and had beaten Gideon in an effort to compel Gideon to pay, prompting Gideon to borrow money from his family in an effort to satisfy the debt. On December 20, 2002, Simpson came to Gideon's home, accompanied by Pierce and Bill Ray Moore. Pierce testified that he accompanied Simpson on this visit to serve as Simpson's "muscle."

After the group arrived at Gideon's house, the exact sequence of events is unclear. Gideon testified that, on learning that Pierce was at his front door, he went into his bedroom and armed himself with a metal baseball bat. Gideon's houseguest, Ernest McGee, opened the door and Simpson, Pierce, and Moore entered the Gideon residence, demanding money from Gideon. Violence broke out and Gideon swung the bat at one of the three men but missed, at which point in time the bat was wrested from him by Pierce, who struck Gideon repeatedly with it, the battle going on through the house until Gideon ended up lying in the bathtub. Gideon explained that, in order to put an end to the beating, he agreed to give the men money and, then, handed over his checkbook containing about $230.00 in cash and a check for $115.00, which had been written by Gideon's girlfriend and made payable to him. Although it was demanded that Gideon endorse the check, he did not, and the three men left after they learned that the police had been called and were presumably on their way; the men carried the cash and the check with them as they left. Gideon was struck on the jaw and his arms and legs.

Gideon explained that he has been disabled since 1997 due to a major automobile collision. He also testified, however, that his disabilities include occasional memory loss. He clarified that, while he can remember "quite a bit" about the incident, he does not remember everything about it.

According to McGee, the three men beat Gideon "something bad." McGee saw Simpson striking Gideon with the bat but admits that he did not witness the entire incident, having left the house to contact the police and to solicit help for Gideon. McGee described the relationship between Simpson and Gideon as one in which there was "bad blood" and prior violence. He testified that he observed Simpson strike Gideon with the bat and admits that he did not see Pierce hit Gideon with it.

Testifying in his own defense, Pierce explained that the trio did not intend to strong-arm Gideon, but did go to the house to collect money from Gideon. He admitted that he knew of the ongoing conflict between Simpson and Gideon regarding money. He also admitted that he took the bat away from Gideon and hit Gideon with the bat.

What is clear from the record is that, at the end of the encounter with Simpson, Pierce, and Moore, Gideon had suffered a beating by Pierce using Gideon's own aluminum bat, and Simpson left with $230.00 in cash and a check in the amount of $115.00 payable to Gideon. Gideon suffered significant injuries including facial swelling, bruising about the arms and legs, and facial fractures.

The State charged Pierce with aggravated robbery. The jury found that Pierce was guilty of such charges and assessed an enhanced punishment of thirty years' imprisonment. Pierce now appeals this conviction, arguing that the evidence is legally and factually insufficient to support the jury's verdict since the record shows only that he accompanied Simpson in an attempt to collect a debt. Pierce maintains that Simpson, in the position of a creditor, cannot commit theft in the process of collecting a debt.

## II. APPLICABLE LAW

### A. Aggravated Robbery

A person commits the offense of robbery if he or she, while in the course of committing theft, and with intent to obtain or maintain control of the property, intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003). A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of property. *See* Tex. Penal Code Ann. § 31.03(a) (Vernon Supp. 2006). Appropriation of property is unlawful if it is without the owner's effective consent. Tex. Penal Code Ann. § 31.03(b)(1) (Vernon Supp.2006). The offense of robbery becomes aggravated robbery, a first-degree felony, if the actor uses or exhibits a deadly weapon during the commission of the robbery. *See* Tex. Penal Code Ann. § 29.03(a)(2), (b) (Vernon 2003).

### B. Law of Parties

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003).

The interplay between the application of the law of parties and the posture of Pierce's point on appeal forces us to address this case in a somewhat unusual manner. Pierce does not contend that his participation in the incident was insuffi-

cient to impose criminal responsibility under Section 7.02. Instead, he contends rather incredibly, that since Simpson acted as a creditor who was collecting a debt, neither Simpson nor Pierce could have committed theft as defined by Section 31.03 of the Texas Penal Code. Essentially, Pierce's position concedes that, if Simpson could commit theft (as an element of aggravated robbery), then Pierce's own role in the encounter subjects him to criminal responsibility under Section 7.02(a)(2). Therefore, rather than reviewing the record to determine whether the evidence is sufficient to show that Pierce committed the offense of aggravated robbery, we must limit our analysis to whether there is legally and factually sufficient evidence to show that Simpson, the alleged creditor, committed the offense of theft.

## C. Debt Collection and Theft

Pierce's position in this appeal is one that has been advanced in and rejected by Texas courts. The Texas Court of Criminal Appeals rejected a similar argument in *Crawford v. State*, 509 S.W.2d 582, 584–86 (Tex.Crim.App.1974). The *Crawford* court reviewed the evidence to support Crawford's conviction for robbery by assault and expressed doubt about whether the evidence even established a creditor-debtor relationship. *See id.* at 585. Assuming it did, however, the court refused to accept that such a relationship would preclude the jury from finding that Crawford committed robbery by assault. *Id.* To clarify the inconsistent opinions on this issue,[1] the *Crawford* court held that a creditor who assaults a debtor to collect an alleged debt

may commit robbery: "To hold otherwise would be establishing a dangerous doctrine, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence. This is contrary to the policy of our form of government." *Id.* at 584 (citing *Henderson v. State*, 149 Tex. Crim. 167, 192 S.W.2d 446 (1946)).

The Fourteenth Court relied on *Crawford* in *Collins v. State*, 800 S.W.2d 267, 269 (Tex.App.-Houston [14th Dist.] 1990, no pet.). The *Collins* court was faced with the issue of whether the record contained legally sufficient evidence to sustain Collins's conviction for aggravated robbery. *See Collins*, 800 S.W.2d at 267. Collins was convicted after he shot his ex-girlfriend, Gilder, to collect on a $30.00 debt for a car part Collins had purchased. *Id.* at 267–68. Although the evidence showed that Gilder owed Collins only $30.00, Collins took $85.00–$100.00.[2] *Id.* at 268. The court pointed out that shooting a debtor is not a legal method of exercising a worker's lien and that the Texas Penal Code did not provide for a defense or justification based on the collection of a debt. *Id.* at 269. The court continued that the use of force was prohibited to collect on a debt:

> To hold that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute a robbery would be establishing a dangerous precedent, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence. This is contrary to the policy of our form of government.

---

1. *See Henderson v. State*, 149 Tex.Crim. 167, 192 S.W.2d 446 (1946); *Barton v. State*, 88 Tex.Crim. 368, 227 S.W. 317 (1921); *Fanin v. State*, 51 Tex.Crim. 41, 100 S.W. 916 (1907). *Crawford* expressly overruled *Barton* to the extent it was still viable at the time. *See Crawford*, 509 S.W.2d at 584–85.

2. The dissenting opinion in *Armstrong* relied on this fact as central to the holding in *Collins* and distinguished *Armstrong* on that basis. *See Armstrong v. State*, 179 S.W.3d 84, 91 (Tex.App.-Fort Worth 2005, no pet.) (Dauphinot, J., dissenting).

*Id.* (citing *Crawford*, 509 S.W.2d at 582; *Henderson v. State*, 149 Tex.Crim. 167, 192 S.W.2d 446 (1946)). We believe this to be the prevailing law; to permit the excuse for assault to be that the violence was used as a means to collect a debt would encourage a descent into lawlessness.

■ Most recently, the Fort Worth Court of Appeals addressed a similar issue. *See Armstrong*, 179 S.W.3d at 88. When an appellant who had been convicted of capital murder complained on appeal that the trial court erred by refusing to include an instruction on the lesser-included offense of murder, the *Armstrong* court looked to the record to determine whether there was any evidence that Armstrong was guilty, if at all, only of murder. *See id.* The court held that there was no evidence that Armstrong was guilty only of murder since the evidence clearly established that he committed aggravated robbery when he used force to collect the $300.00 which the victim allegedly owed to Armstrong. *Id.* at 87–88. Since the evidence showed that the victim was killed in the course of Armstrong's attempt to collect a debt by force, there was no evidence that would support a verdict of murder rather than capital murder. *Id.* Although the issue in *Armstrong* is framed somewhat differently than the issue presented in the instant case, the *Armstrong* majority plainly announced its position that a creditor who collects a debt by use of force can commit aggravated robbery. *See id.* Being in the position of a creditor does not endow the creditor with the right to commit mayhem to collect a debt which is owed.

## III. APPLICATION

### A. Legal Sufficiency of the Evidence

■ The evidence shows that Gideon gave the group $345.00 in order to put an end to the assault. Gideon never conceded that he still owed Simpson the money he surrendered to the group. In fact, he testified to the contrary: that he had borrowed money from family and paid Simpson for the damage to the car in May 2002. Both his uncle and his mother testified similarly. Such evidence, when viewed in a light most favorable to the verdict, undermines the very basis of Pierce's position-that a creditor-debtor relationship existed at the time of the assault. That said, we conclude that the evidence is legally sufficient to show the men committed theft of Gideon's property and, thus, committed aggravated robbery.

### B. Factual Sufficiency of the Evidence

Viewing the evidence, we conclude that the record contains no evidence contrary to the verdict. Even if we assume that a creditor-debtor relationship was ever established and continued to the point of the assault, the fact that Gideon may have owed Simpson money is not evidence that would support a finding contrary to the verdict. Even if the record shows that Gideon still owed money to Simpson as a result of the car accident, the record wholly fails to establish that Simpson had ownership rights in the particular funds taken from Gideon on December 20. *See Crawford*, 509 S.W.2d at 584; *Armstrong*, 179 S.W.3d at 87–88; *Collins*, 800 S.W.2d at 269. To the contrary, the record shows that the money belonged to Gideon.

## IV. CONCLUSION

■ We adopt the holding in *Crawford*, *Armstrong*, and *Collins* to the extent that such opinions represent the position that a creditor who collects on a debt by use of force can commit the offense of aggravated robbery. We echo the policy concerns expressed by courts throughout Texas regarding the implications of a holding that a creditor cannot commit the offense of ag-

gravated robbery of his debtor when the creditor uses force to collect on a debt.

The record shows that the group beat Gideon with a baseball bat and took $345.00 from Gideon; it fails to show that Simpson was the owner of those funds. With that, we conclude that the evidence is legally and factually sufficient to sustain Pierce's conviction as a party to the aggravated robbery.

We, therefore, affirm the judgment of the trial court.