TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00805-CR






Joshay Richardson, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. D-1-DC-06-301192, HONORABLE JON N. WISSER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Joshay Richardson of the offense of aggravated robbery. See
Tex. Penal Code Ann. § 29.03(a)(3)(A) (West 2003). Punishment was assessed at 28 years'
imprisonment. In a single point of error, Richardson asserts ineffective assistance of counsel. We
will affirm the judgment.


BACKGROUND

 The jury heard evidence that, on the night of May 28, 2006, Richardson was at a
nightclub in downtown Austin where, he claimed, he had arranged for a musician to perform at the
club. The club's owner, Amer Massood, testified that it was "Teen Night," a night in which the club
does not serve alcohol, plays music "free of profanity," and closes earlier than usual. At
approximately 8:30 or 9:00 p.m., while the club was still open, Massood was outside smoking when
Richardson approached him. Massood recounted how Richardson showed him what appeared to be
a contract and claimed that Massood owed him one thousand dollars for arranging that night's
entertainment. Massood, who did not deal directly with issues related to entertainment at his club,
testified that he had never previously seen Richardson or the contract. Massood informed
Richardson that he had "nothing to do with it," and told him to "sort it out with the promoters," the
people who scheduled the club's entertainment. Richardson persisted in his demand for the money,
and Massood eventually told him to wait until the end of the night and that they would "settle it"
then. Massood hoped that this would give him time to speak with one of the promoters and find out
what kind of deal had been made with Richardson. Massood testified that Richardson seemed angry
and "made this strange motion like he put his hand back to . . . his jeans," but Richardson said
nothing further to Massood and walked away.

 Later that night, shortly after closing time, Massood entered the club and noticed
Richardson inside. This upset Massood, because only employees of the club were supposed to be
inside the club at this time. Massood yelled at his security guards, asking them why Richardson was
inside. One of the club's "bouncers," Nick Vladasel, told Richardson to leave and attempted to
escort him out. Vladasel testified that when he grabbed Richardson, he noticed that Richardson had
a gun pointed at his chest. (1) Vladasel backed off, and Richardson then pointed the gun directly at
Massood's head. Massood testified that the gun was so close to him that the barrel touched his head. 
Vladasel testified that Richardson said, "You shut the f*** up and give me the money. Otherwise,
I will shoot somebody." At this point, all of Massood's security guards, except for Vladasel, ran
outside. Richardson continued to demand that Massood give him the money. Massood testified that
he agreed to pay Richardson, offering to "write him a check." Richardson then grabbed Massood
and directed him and Vladasel toward Massood's office, where the club's money was kept.

 Inside the office, the club's cashier, Carmen Vera, was counting the money that the
club had collected that night. Vera's 15-year-old daughter was also in the office. Vera testified that
when Richardson, Massood, and Vladasel entered the office, Richardson pointed the gun first at her
daughter and then at her. According to Vera, Richardson told her, "You f***ing whore, give me the
money or I'll shoot you right here." Vladasel testified that Richardson also threatened to shoot
Vera's daughter. Massood instructed Vera to give Richardson the money, and she did so.

 Vera's daughter also testified. She testified that when Richardson entered the office
with Massood and Vladasel, Richardson had a gun pointed at Massood's head. She confirmed that
Richardson pointed the gun at both her and her mother and that he demanded that her mother give
him the money. She also testified that after her mother gave Richardson the money, Richardson "ran
out the door."

 Richardson fled the scene on foot and was apprehended shortly thereafter by
Detective Thomas Hugonnett of the Austin Police Department. Detective Hugonnett testified that
when he arrested Richardson, he found a "large wad of cash in his left pocket," approximately
$1,200. The gun that Richardson allegedly used in the commission of the crime was recovered in
the vicinity of where Detective Hugonnett had been pursuing Richardson.

 Detective Robert Perez of the Austin Police Department interviewed Richardson after 

Richardson's arrest. Detective Perez testified to statements that Richardson made during the
interview, including that he was not afraid of Vladasel, that he grabbed Massood by the arm and told
him, "You're going to give me my money," and that he was in possession of a firearm during the
incident. A videotaped recording of the interview was admitted into evidence.

 The jury convicted Richardson of aggravated robbery. Richardson elected to be
sentenced by the court. The district court found to be true enhancement paragraphs alleging prior
convictions for possession of marihuana, possession of cocaine, and sexual assault. The district
court sentenced Richardson to 28 years' imprisonment. This appeal followed.


DISCUSSION

 On appeal, in his sole point of error, Richardson asserts that his trial counsel was
ineffective in advancing what he now characterizes as a theory of "self-defense to collect a debt."
In fact, trial counsel appeared more precisely to assert a theory similar to the former common-law
rule that a creditor who assaults his debtor and compels him to pay his debt cannot be convicted of
robbery, (2) coupled with a claim of self-defense based on Richardson's fear for his own safety during
the incident. Richardson argues here that he could not have prevailed under such a theory because
the law does not recognize a defense of self-defense in aggravated-robbery cases. Thus, Richardson
claims, "there can be no plausible professional reason" for counsel's decision to assert one.

 We evaluate claims of ineffective assistance of counsel under the two-pronged
analysis in Strickland v. Washington, 466 U.S. 668 (1984). Pursuant to Strickland, Richardson must
demonstrate (1) that his counsel's performance was deficient, i.e., it fell below an objective standard
of reasonableness, and (2) that Richardson was prejudiced by the deficient performance, i.e., a
reasonable probability exists that, but for the deficient performance, the result of the proceeding
would have been different. 466 U.S. at 687-88, 694; Ex parte Cash, 178 S.W.3d 816, 818
(Tex. Crim. App. 2005).

 Our review of counsel's performance must be highly deferential. Andrews v. State,
159 S.W.3d 98, 101 (Tex. Crim. App. 2005). There is a strong presumption that counsel's conduct
falls within a wide range of reasonable professional assistance, and the defendant must overcome
that presumption. Id. We determine the reasonableness of counsel's challenged conduct in
context, and view it as of the time of counsel's conduct. Id. We commonly assume a strategic
motive if any can be imagined. Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002). 
Any allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999); see also Janecka v. State, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996)
(appellate court may not consider on direct appeal any factual assertions that are outside the record). 
If counsel's reasons for his conduct do not appear in the record and there is at least the possibility
that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and
deny relief on direct appeal. Ortiz v. State, 93 S.W.3d 79, 89 (Tex. Crim. App. 2002). In most
instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. 
Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Moreover, the record ordinarily does
not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. 
Id. Trial counsel should ordinarily be afforded an opportunity to explain his actions before
being denounced as ineffective. Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). 
Absent such an opportunity, an appellate court should not find deficient performance unless the
challenged conduct was so outrageous that no competent attorney would have engaged in it. 
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Hence, in most ineffective
assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately
evaluate such claims. Torres, 943 S.W.2d at 475.

 Under our deferential standard of review and limited scope of review, we cannot
conclude that the challenged conduct was "so outrageous that no competent attorney would have
engaged in it." Goodspeed, 187 S.W.3d at 392. It is true that a person has no right of self-defense
while committing a robbery, (3) nor is there a defense where one commits robbery to collect a debt. (4) 
Nonetheless, it is possible that trial counsel, faced with overwhelming evidence of Richardson's
guilt, was pursuing a strategy aimed at portraying Richardson's actions in the best light possible
under the circumstances, perhaps with an eye to sentencing. See Tex. Code Crim. Proc. Ann. art.
37.07 § 3 (West Supp. 2007) ("Regardless of the plea and whether the punishment be assessed by
the judge or the jury, evidence may be offered by . . . the defendant as to any matter the court deems
relevant to sentencing, including but not limited to . . . the circumstances of the offense for which
he is being tried, . . ."). In fact, Richardson was ultimately sentenced to 28 years' imprisonment,
where the minimum sentence in this case was 25 years and the State had recommended first 50 and
then 40 years' imprisonment.

 In any event, Richardson has failed to demonstrate that a reasonable probability exists
that, but for any deficient performance of counsel, the result of the proceeding would have been
different. There was overwhelming evidence in this case that Richardson committed the act of which
he was accused. Four eyewitnesses testified that Richardson pointed a gun at them, threatened them,
and demanded money from them. When Richardson was apprehended, law enforcement recovered
approximately $1,200 in cash found on his person. Additionally, the police interviewed Richardson
after he was arrested, and he made incriminating statements in the interview that were admitted into
evidence. Given these facts, it is difficult to imagine any defensive theory that counsel could have
tried which would have changed the result of the proceeding. Nor does Richardson suggest any
alternative theory that counsel could have attempted.

 We overrule Richardson's sole point of error.


CONCLUSION

 Having overruled Richardson's point of error, we affirm the judgment of the
district court.


 ____________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: May 8, 2008

Do Not Publish
1. The gun was later identified as a .45 caliber Glock with laser sights.
2. See Barton v. State, 227 S.W. 317, 319 (Tex. Crim. App. 1921), overruled by Crawford
v. State, 509 S.W.2d 582, 585 (Tex. Crim. App. 1974).
3. See Evans v. State, 601 S.W.2d 943, 946 (Tex. Crim. App. 1980); Dickson v. State,
463 S.W.2d 20, 23 (Tex. Crim. App. 1971); Nance v. State, 807 S.W.2d 855, 863
(Tex. App.--Corpus Christi 1991, pet. ref'd).
4. See Crawford v. State, 509 S.W.2d 582, 585 (Tex. Crim. App. 1974); Pierce v. State,
218 S.W.3d 211, 214 (Tex. App.--Texarkana 2007, pet. ref'd); Armstrong v. State, 179 S.W.3d 84,
88 (Tex. App.--Fort Worth 2005, no pet.).